# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROMEO BALEN, individually, and on
behalf of all others similarly
situated,
*Plaintiff-Appellant,*

v.

HOLLAND AMERICA LINE INC.,
*Defendant-Appellee.*

No. 07-36011

D.C. No.
CV-07-00645-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
May 6, 2009—Seattle, Washington

Filed October 2, 2009

Before: Kim McLane Wardlaw, Richard A. Paez, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

14211

---

**COUNSEL**

Gregory M. Miller, Reed, Longyear, Malnati & Ahrens, PLLC, Seattle, Washington, for the plaintiff-appellant.

Stephen R. Rummage and Roger A. Leishman, Davis Wright Tremaine LLP, Seattle, Washington, for the defendant-appellee.

---

**OPINION**

N.R. SMITH, Circuit Judge:

Romeo Balen, individually and on behalf of those similarly situated, appeals the district court's order granting Holland

America Line Inc.'s ("HAL") motion to compel arbitration. Balen contends that his claims cannot be resolved through arbitration, because (1) United States law does not permit the arbitration of claims brought under the Seamen's Wage Act, 46 U.S.C. § 10313 ("Wage Act") and (2) a valid arbitration agreement did not cover his claims against HAL. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Claims under the Wage Act are subject to arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"). United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. II, Dec. 29, 1970, 21 U.S.T. 2517 [hereinafter Convention]. Balen was subject to an arbitration agreement contained in the Collective Bargaining Agreement between his union and his employer. This arbitration agreement was valid and enforceable under the Convention.

## I.   BACKGROUND

The Philippine Overseas Employment Administration ("POEA"), a division of the Department of Labor and Employment of the Republic of the Philippines, closely regulates the employment of Filipino seamen by foreign corporations. Foreign employers must go through a POEA-licensed employment agency to hire workers. The POEA approves and administers standard employment contracts of the Filipino seamen. The POEA-approved contracts include the POEA's Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean Going Vessels ("Standard Terms").

Section 3 of the Standard Terms, titled "Free Passage from the Point of Hire to the Port of Embarkation" states: "[t]he seafarer shall join the vessel or be available for duty at the date and time specified by the employer. The seafarer shall

travel by air or as otherwise directed at the expense of the employer."

Section 29 of the Standard Terms concerns "Dispute Settlement Procedures." It states:

> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment.

Arbitration of all claims by Filipino overseas seafarers is an integral part of the POEA's mandate to promote and monitor the overseas employment of Filipinos and safeguard their interests.

In 2004, HAL drafted a Gratuity and Beverage Service Charge Plan ("Gratuity Plan"), under which it would bill passengers for a daily gratuity charge. Under the Gratuity Plan, employees would have the right to share in the gratuities charged to passengers. HAL guaranteed a minimum gratuity amount for each person, regardless of actual payment by passengers. With the increased gratuity compensation, HAL set a lower base pay rate. This Gratuity Plan also included a provision that required participants to reimburse HAL in monthly

installments for deployment costs, including travel expenses incurred by HAL, in qualifying these seafarers to work overseas. Under this plan, participants would earn more than they received previously.

Because the Gratuity Plan modified the existing collective bargaining agreement ("CBA") between HAL and the Filipino seamen's union (Associated Marine Officers' and Seamen's Union of the Philippines ("AMOSUP")), HAL, acting through its agent, United Philippine Lines, Inc. ("UPL"), a POEA-licensed employment agency, entered into negotiations regarding its Gratuity Plan with AMOSUP. AMOSUP represented Balen and other Filipino seafarers. Under Philippine law, AMOSUP could enter into such agreements without POEA's approval if the benefits were greater than those provided in the Standard Terms. The CBA was approved by AMOSUP, and AMOSUP also submitted the CBA to the POEA, who marked it with a "received" stamp and the attached payscale with an "approved" stamp.

Balen was employed by HAL from September 2005 through March 2006 as a beverage attendant. Before he left the Philippines in September 2005, Balen signed a document acknowledging the terms of the Gratuity Plan. Balen could not, however, fully afford to pay the $2,119 travel expenses in the time frame demanded by HAL. Balen was therefore discharged in March 2006.

On April 27, 2007, Balen filed suit in U.S. District Court for the Western District of Washington, claiming that HAL (1) breached its contract when it required him to pay travel expenses and (2) violated the Wage Act. HAL moved to compel arbitration and dismiss Balen's complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. The district court granted the motion, finding that Balen's Wage Act claims were subject to arbitration under the Convention. The district court also found that (1) the CBA covered Balen's

claims against HAL and (2) Section 29 of the Standard Terms made his claims subject to arbitration.

## II.   DISCUSSION

We review *de novo* the district court's decision to grant or deny a motion to compel arbitration. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004). The underlying factual findings are reviewed for clear error. *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001). Balen contends the district court erred in compelling arbitration, because (1) the Convention does not apply to Wage Act claims and (2) the arbitration agreement is invalid. We disagree.

### A.   *The Convention requires enforcement of arbitration agreements.*

**[1]** It is well-settled that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Id.* at 24-25. The Supreme Court has consistently recognized "the emphatic federal policy in favor of arbitral dispute resolution," a policy that "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Article II(1) of the Convention also recognizes the importance of arbitral resolution. It provides that "[e]ach Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." Convention, *supra*, art. II.

### 1. The Federal Arbitration Act's Exemption Clause

Balen contends that the district court erred in granting HAL's motion to compel arbitration, because the Federal Arbitration Act (FAA) exempts foreign arbitration agreements that would otherwise be covered by the Convention. We disagree.

[2] Like the Convention, 9 U.S.C. § 202, the FAA applies to maritime contracts in commerce. Unlike the Convention, the FAA includes a provision exempting "contracts of employment of seamen" from domestic arbitration. 9 U.S.C. §§ 1, 2. However, in *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1154 (9th Cir. 2008), we addressed whether the FAA's exemption clause "applies to arbitration agreements that would, in the absence of the exemption clause, be covered by the Convention." We held that it did not. *Id. Rogers* is controlling on this issue, and we are bound to follow it. *See, e.g.*, *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).

### 2. 46 U.S.C. § 10313

Balen contends the district court erred in compelling arbitration, because *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351 (1971), prohibits arbitration agreements from divesting courts of jurisdiction over seafarer wage disputes under 46 U.S.C. § 10313. He argues that § 10313 provides that the courts are available to seamen to enforce the rights guaranteed by this section. In *Arguelles*, the Supreme Court concluded that individual seamen could choose between pursuing arbitral or judicial remedies, because Congress had not clearly made arbitration mandatory. *Arguelles*, 400 U.S. at 357-58.

Again, *Rogers* precludes this argument. After reviewing *Arguelles* and the provisions under 46 U.S.C. § 10313, we held in *Rogers* that the Convention "specifically and expressly compels federal courts to enforce arbitration agreements.

Therefore, *Arguelles* does not alter our conclusion that the exemption clause does not apply to the Convention Act." *Rogers*, 547 F.3d at 1157. Accordingly, *Arguelles* does not preclude enforcement of the arbitration agreement under the Convention.

### 3.    46 U.S.C. § 10317

**[3]** Balen contends that the arbitration agreement is void under 46 U.S.C. § 10317. Section 10317 provides:

> A master or seaman by any agreement other than one provided for in this chapter may not forfeit the master's or seaman's lien on the vessel or be deprived of a remedy to which the master or seaman otherwise would be entitled for the recovery of wages. A stipulation in an agreement inconsistent with this chapter, or a stipulation by which a seaman consents to abandon a right to wages if the vessel is lost, or to abandon a right the seaman may have or obtain in the nature of salvage, is void.

Balen argues that the arbitration agreement is void, because it requires him to abandon his Wage Act rights. We disagree.

**[4]** First, this provision does not apply to foreign vessels. Section 10301(c) specifically states that "unless otherwise provided, this chapter does not apply to a foreign vessel." While other provisions of the Merchant Seamen Protection and Relief Act specifically state when they apply to foreign vessels, § 10317 does not. *See, e.g.*, 46 U.S.C. § 10313(i) ("This section applies to a seaman on a foreign vessel when in a harbor of the United States."). Balen argues that the legislative history of the Merchant Seamen Relief and Protection Act indicates that § 10317 applies to seamen on foreign vessels when harbored in the United States. However, because this statute is unambiguous, we need not look to legislative history and consider these arguments. *See North Dakota v.*

*United States*, 460 U.S. 300, 312 (1983) (noting that if the statutory language is clear and unambiguous "that language must ordinarily be regarded as conclusive." (citation and internal quotation marks omitted)).

**[5]** Second, there is nothing in the record indicating that Balen would forfeit or be deprived of any substantive rights by arbitration because, as explained below, he may bring his Wage Act claims in the arbitration proceedings. Accordingly, we hold that § 10317 does not invalidate Balen's arbitration agreement.

### 4. Public Policy

Balen contends that the arbitration provision is null and void because it is contrary to public policy. Balen argues that, by ordering arbitration, the court would eliminate a significant and protected component of his seafarer's wages, effectively voiding Congress's intent to ensure proper treatment of seamen (a class for which Congress enacted comprehensive legislation). Again, we disagree.

**[6]** The Convention requires that courts must enforce an agreement to arbitrate unless the agreement is "null and void, inoperative or incapable of being performed." *Mitsubishi Motors*, 473 U.S. at 619 n.3 (quoting 21 U.S.T. at 2519 (citing 9 U.S.C. § 203 (conferring federal jurisdiction over Convention claims))). Like the Supreme Court, *id.* at 631, we also have recognized "the strong public policy favoring arbitration," including international arbitration. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 726 (9th Cir. 2007). Given this strong public policy, Balen must show that the public policy regarding the proper treatment of seafarers is stronger than the public policy favoring the arbitration. *See Rogers*, 547 F.3d at 1159. Balen has failed to meet this burden.

**[7]** First, Balen has not established what statutory remedy or procedure he could pursue in the United States that he

could not pursue in the Philippines. There is no reason to conclude that Philippine arbitrators could not consider an action arising under the Wage Act. *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 908 (5th Cir. 2005). Balen has failed to establish that he could not pursue any of his statutory claims in an arbitration proceeding in the Philippines. Further, to the extent that the arbitration body in the Philippines does not apply the Wage Act, Balen will be free to return to the district court in Washington and to move to set aside the arbitration award.

The Fifth Circuit reached a similar conclusion in *Lim v. Offshore Specialty Fabricators, Inc*. There, Filipino seafarers argued that their claims under the Fair Labor Standards Act ("FLSA") were incapable of resolution by the National Labor Relations Commission ("NLRC"). *Id.* The NLRC is the Philippine body charged with arbitrating employment claims under Standard Term 29. *Id.* The Fifth Circuit stated that "[t]here is no reason to conclude the NLRC could not consider an action arising under the FLSA, *if* that statute applies to plaintiffs' claims." *Id.*

Balen's second public policy argument is similar to that made by the *Rogers* plaintiffs. The *Rogers* plaintiffs argued that the arbitration provision should be invalidated, because "public policy requires that the courts remain open to seafarers for the enforcement of their wage claims" because seafarers are "wards of admiralty." *Rogers*, 547 F.3d at 1158 (citation and internal quotation marks omitted). We rejected this argument, stating: "This argument is insufficient to warrant rendering the arbitration provisions void." *Id.*

Accordingly, we reject Balen's arguments regarding public policy.

### B.   *Balen's claims against HAL are subject to mandatory arbitration.*

[8] The Convention applies to "[a]n arbitration agreement . . . arising out of a legal relationship, whether contractual or

not, which is considered as commercial." 9 U.S.C. § 202. Courts generally address four factors to determine whether to enforce an arbitration agreement under the Convention. *See, e.g.*, *Bautista v. Star Cruises*, 396 F.3d 1289, 1294-95 (11th Cir. 2005); *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 n.13 (3d Cir. 2003). "These four require that (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Bautista*, 396 F.3d at 1294 n.7 (citation omitted).

[9] The agreement in the record provides for arbitration in the Philippines. The Philippines acceded to the Convention in 1967. The record clearly establishes that the parties' agreement arises out of a legal relationship that is commercial. *See Rogers*, 547 F.3d at 1155 (finding that employment contracts of seafarers arise out of legal relationships which are considered commercial). There is also no dispute that Balen is not a United States citizen. Balen contends only there is no agreement in writing to arbitrate the dispute, because (1) HAL is not a party to the CBA and (2) the CBA was never approved by the POEA. We disagree. There was a valid, written agreement between the parties to arbitrate any dispute.[1]

---

[1]We note that, even absent a valid CBA, Section 29 of the Standard Terms requires the parties to arbitrate but gives seafarers and their employers a choice of forums: they can arbitrate either before the NLRC or a voluntary panel. Section 29 gives seafarers and their employers a choice of forums: they can arbitrate either before the NLRC or a voluntary panel. Specifically, it states: "If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), . . . or to the original and exclusive jurisdiction of the voluntary arbitrator[s]."

### 1.   HAL is party to the CBA.

Balen contends that the district court's finding that HAL was a party to the CBA was clearly erroneous. We disagree.

Review under the clearly erroneous standard is significantly deferential, requiring a "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotation marks omitted); *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir. 2004). If the district court's account of the evidence is plausible in light of the entire record, the court of appeals may not reverse, even if it would have weighed the evidence differently. *See Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), *aff'd*, 540 U.S. 644 (2004).

[10] Nothing in the record indicates that the district court's finding was clearly erroneous. The CBA itself indicates that HAL is a party. The cover page states: "COLLECTIVE BARGAINING AGREEMENT BETWEEN AMOSUP ASSOCIATED MARINE OFFICERS' AND SEAMEN'S UNION OF THE PHILIPPINES AND HOLLAND AMERICA LINE INC. REPRESENTED BY UNITED PHILIPPINE LINES, INC." Balen contends, however, that HAL is not a party to the CBA, because UPL signed the CBA on HAL's behalf. Balen's argument is without merit, however, because a corporation must use employment agencies licensed by the POEA to employ Filipino Seamen. Accordingly, HAL had no choice but to engage an agency like UPL to represent it. Because ordinary contract and agency principles apply to arbitration agreements, *see Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986), that UPL signed the CBA on HAL's behalf renders HAL a party to the agreement. The district court did not clearly err when it found that HAL was a party to the CBA.

## 2. The CBA is valid.

Balen contends that, even if HAL were a party to the CBA, the CBA is invalid, because the POEA did not approve the agreement. We disagree.

[11] Section 29 of the Standard Terms provides that, for any "claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators." Nothing in the Standard Terms or the record limits the application of this provision to only those agreements approved by the POEA. Furthermore, Balen concedes that the POEA does not, as a matter of practice, approve CBAs. Certainly, it would seem odd for the POEA to (1) provide a Standard Term that envisioned CBAs, (2) require their approval, and yet (3) never approve them. There is no contention that the POEA rejected the CBA, and the POEA's lack of approval cannot invalidate the CBA.

Because (1) the HAL is a party to the CBA and (2) the CBA contains an provision for arbitration, the CBA is enforceable against Balen under the Convention.

## III. CONCLUSION

[12] The district court properly granted HAL's motion to compel arbitration. Balen's claims under the Seamen's Wage Act are subject to arbitration pursuant to the Convention. The arbitration agreement was also valid and enforceable under the Convention. We therefore affirm.

**AFFIRMED.**