Shelma **RAMIREZ**, Plaintiff,

v.

**NCL (BAHAMAS), LTD. d/b/a Norwegian Cruise Lines,** Defendant.

**Case No. 12–24460–CIV.**

United States District Court, S.D. Florida.

Oct. 16, 2013.

Luis Alfonso Perez, Luis A. Perez PA, Christopher John Bailey, Elizabeth Koebel Russo, Russo Appellate Firm, Miami, FL, for Plaintiff.

Curtis Jay Mase, Sarah de Flesco, Thomas Dennis Alan Briggs, Valentina M. Tejera, Mase, Lara, Eversole P.A., Miami, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendant, NCL (Bahamas), LTD. d/b/a Norwegian Cruise Lines's ("NCL") Motion to Compel Arbitration ("Motion," D.E. 24), filed February 28, 2013. On March 21, 2013, Plaintiff Shelma Ramirez ("Plaintiff") filed a Response in Opposition ("Response," D.E. 34), to which NCL filed a Reply ("Reply," D.E. 38) on April 10, 2013. Having considered NCL's Motion, the Response, the Reply, and the record, the Court finds as follows.

## I. Relevant Background

This case involves a seaman's claims against NCL for injuries sustained while working aboard the Norwegian Pearl, a Bahamian-flagged cruise ship. (Response at 1.) On or about May 24, 2009, Plaintiff— a Nicaraguan citizen and resident—sustained injuries to her back and Achilles tendon during the course and scope of her employment. (Motion ¶ 1, Response at 1.) Plaintiff alleges that NCL treated only her Achilles tendon injury and did not provide the prompt, proper, or adequate medical treatment necessary to treat her back injuries. (Response at 1.)

Plaintiff filed a four-count Complaint in Florida state court alleging: (I) Jones Act negligence pursuant to 46 U.S.C. § 30103; (II) unseaworthiness; (III) failure to provide prompt and adequate medical care; and (IV) failure to provide maintenance and care. (Response at 2.) Thereafter, NCL removed the case to this Court pursuant to 28 U.S.C. § 1441 et seq. and 9 U.S.C. § 205. (Motion ¶ 8, Notice of Removal (D.E. 1) at 4.)

NCL filed the instant Motion to Compel Arbitration pursuant to Paragraph 12 of Plaintiff's Contract of Employment ("Employment Agreement," D.E. 24–1) with NCL, which provides, in relevant part:

Seaman agrees, on his own behalf and on behalf of his heirs, executors, and assigns, that any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seaman's shipboard employment with Company including, but not limited to, claims such as personal injuries, Jones Act claims, actions for maintenance and cure, unseaworthiness, wages, or otherwise, no matter how described, pleaded or styled, and whether asserted against Company, Master, Employer, Ship Owner, Vessel or Vessel Operator, shall be referred to and re-

solved exclusively by binding arbitration pursuant to the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (New York 1958) ("The Convention") . . .

. . .

The place of the arbitration shall be the Seaman's country of citizenship, unless arbitration is unavailable under The Convention in that country, in which case, and only in that case, said arbitration shall take place in Nassau, Bahamas. The substantive law to be applied to the arbitration shall be the law of the flag state of the vessel.

(Motion ¶ 3 (citing Employment Agreement at ¶ 12).) NCL submits that the Employment Agreement is commercial in nature and that the arbitration agreement therefore falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), and is subject to its enabling legislation, 9 U.S.C. § 201 et seq. (Motion ¶ 4.) Nicaragua, the Bahamas, and the United States are all signatories to the Convention. (*Id.*)

Additionally, NCL contends that Plaintiff is subject to a Collective Bargaining Agreement ("CBA," D.E. 24–2) which also requires arbitration of her claims. (*Id.* ¶ 6.) It provides:

The [Norwegian Seafarers' Union (hereinafter "NSU")], Seafarer and NCL agree that all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seafarer's shipboard employment with NCL including, but not limited to, claims such as personal injuries, Jones Act claims, actions for maintenance and cure, unseaworthiness, or otherwise, no matter how described, pleaded or styled, and whether asserted against NCL, Master, Employer, Ship Owner, Vessel or Vessel Operator, and any complaints or disputes between NSU and NCL not

resolved through good faith negotiations shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on Recognition and enforcement of Foreign Arbitral Awards (New York 1958) ("The Convention"), except as otherwise provided in any government mandated contract, such as the Standard POEA Contract for Seafarers from the Philippines. (*Id.* (citing CBA at 20).) Thus, NCL argues that because Plaintiff's claims arise out of her employment with NCL, and because she is subject to the Employment Agreement and the CBA, the parties must submit this dispute to arbitration. (*Id.* ¶¶ 5, 9.)

## II. Discussion

The sole issue before the Court is whether Plaintiff is bound to submit her claims to arbitration, as required by the Employment Agreement and the CBA. In deciding a motion to compel arbitration under the Convention, the court conducts " 'a very limited inquiry.' " *Bautista v. Star Cruises,* 396 F.3d 1289, 1294 (11th Cir. 2005) (quoting *Francisco v. STOLT ACHIEVEMENT MT,* 293 F.3d 270, 273 (5th Cir.2002)). "A district court must order arbitration unless (1) the four jurisdictional prerequisites are not met, *Std. Bent Glass Corp. v. Glassrobots Oy,* 333 F.3d 440, 449 (3d Cir.2003), or (2) one of the Convention's affirmative defenses applies." *Bautista,* 396 F.3d at 1294–95 (citing *Di Mercurio v. Sphere Drake Ins., PLC,* 202 F.3d 71, 79 (1st Cir.2000)). The four jurisdictional prerequisites are that: "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American

citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Bautista,* 396 F.3d at 1294 n. 7 (citing *Std. Bent Glass Corp.,* 333 F.3d at 449).

It is undisputed that all four prerequisites are met in this case. First, the arbitration agreement is contained within two separate, written agreements: the Employment Agreement and the CBA. Plaintiff executed the Employment Agreement and consented to the CBA. Second, the arbitration agreement requires arbitration in either Nicaragua or the Bahamas, both of which have ratified the Convention. Third, the Employment Agreement and CBA both arise from a commercial legal relationship. *Bautista,* 396 F.3d at 1300. Finally, neither Plaintiff nor NCL is a U.S. citizen. Where an arbitration agreement satisfies all jurisdictional prerequisites, and unless one of the limited affirmative defenses applies, arbitration must be compelled. *Bautista,* 396 F.3d at 1294–95; *Lindo v. NCL,* 652 F.3d 1257, 1272 (11th Cir.2011). The affirmative defenses recognized by *Bautista* are those found in Article II of the Convention: "that the said agreement is null and void, inoperative or incapable of being performed." 396 F.3d at 1301–02 (quoting Convention art. II(3), June 10, 1958, 21 U.S.T. 2517, available at 1970 WL 104417). Plaintiff argues that seamen's employment contracts are not subject to arbitration, *i.e.,* that the arbitration agreement is "null and void." *See id.*

Plaintiff concedes, however, that the Eleventh Circuit Court of Appeals has previously rejected her argument and held that agreements to arbitrate seafarer's claims are enforceable under the Federal Arbitration Act, 9 U.S.C. § 201 et seq., the Convention's implementing legislation.

*Bautista,* 396 F.3d at 1302.[1] *Bautista* was recently re-affirmed in *Lindo*—a case factually indistinguishable from the one at bar. 652 F.3d at 1275–87. Plaintiff therefore acknowledges that her claims must be submitted to arbitration under *Bautista* and *Lindo,* but opposes NCL's Motion in a "good faith attempt to change the law." (Response at 3 n. 3.) She also submits two alternative arguments for the Court's consideration. *See* Section II(A) & (B), *infra.*

In *Lindo,* the seafarer-plaintiff was a Nicaraguan citizen employed by NCL. 652 F.3d at 1260. The plaintiff claimed to have suffered a back injury while carrying trash bags, and sued for, *inter alia,* Jones Act negligence, failure to provide entire maintenance and cure, and unseaworthiness. *Id.* at 1260–61. The plaintiff was subject to an employment contract and a collective bargaining agreement, both of which contained a mandatory arbitration provision requiring arbitration in the seafarer's home country (or, if not a Convention signatory, the Bahamas) under the law of the flag state of the vessel. *Id.* at 1261. The Eleventh Circuit ultimately affirmed the district court's order compelling arbitration. *Id.* at 1287.

This Court is bound by the Eleventh Circuit's decisions in *Lindo* and *Bautista* and therefore need not analyze the minutiae of Plaintiff's arguments, which focus primarily on why *Lindo* and *Bautista* should be overturned. The Court will therefore limit its analysis to Plaintiff's alternative arguments: (1) that the arbitration agreement should not be enforced because NCL's refusal to pay the entire cost of arbitration constitutes and anticipatory breach of the agreement; and (2) that in the event the Court orders arbitration,

it should do so under United States law in Miami.

## A. Costs of Arbitration

 Plaintiff argues that the arbitration agreement should not be enforced because pursuant to the CBA, NCL is required to pay the entire cost of arbitration and that its refusal to do so is an anticipatory breach of the parties' agreement. (Response at 15.) The CBA provides, in relevant part:

> e. In the event **a dispute between the NSU and NCL, or between NCL and a Seafarer represented by the NSU,** cannot be resolved through good faith negotiations and either party commences an arbitration proceeding, NCL shall bear the reasonable costs related to the arbitration process from beginning to end including, but not limited to fees charged and expenses incurred by arbitrators, and any costs related to proceedings brought by the NSU necessary to enforce a decision. The NSU and NCL shall each bear the costs of their own attorney fees and legal representation.
>
> f. If the Seafarer rejects the representation appointed by the N NSU at arbitration or thereafter, or if he or she initiates arbitration independently, then he or she will cover the cost of his or her own legal representation, if any. Where the Seafarer is not represented by the NSU, the arbitrator shall seek the NSU's opinion as to the interpretation of this Agreement before making a decision.

(CBA, Art. 8, ¶ 7) (emphasis added). Thus, the provision requiring NCL to pay all costs related to the arbitration proceedings is only triggered in a dispute between

---

1. *See also Balen v. Holland Am. Line Inc.,* 583 F.3d 647, 656 (9th Cir.2009); *Rogers v. Royal Caribbean Cruise Line,* 547 F.3d 1148, 1159 (9th Cir.2008); *Lim v. Offshore Specialty Fabricators,* 404 F.3d 898 (5th Cir.2005).

(1) the NSU and NCL, or (2) NCL and a Seafarer represented by the NSU. Plaintiff is not represented by the NSU in this case and therefore subsection (e) is inapplicable. The CBA appears to be otherwise silent as to who bears the costs of arbitration for claims pursued by a seafarer not represented by the NSU, except insofar as subsection (f) requires the seafarer to "cover the cost of his or her own legal representation, if any." *Id.*

Plaintiff, however, cites the affidavit of Norwegian Seafarers Union (NSU) President, Jacqueline Smith, who stated:

> Pursuant to the Arbitration Clause included in the [CBA] relevant to the instant case, it was the intention of the parties to the CBA that [NCL] pay all reasonable and necessary costs of resolving the case in arbitration such as filing fees, management fees, as well as professional fees and expenses of arbitrators.

(Affidavit of Jacqueline Smith (D.E. 34–1 ¶ 2).) In response, NCL argues that subsection (f) delegates the issue of arbitration costs to the arbitrator, citing the affidavit of Daniel S. Farkas, Senior Vice President and General Counsel for NCL and an individual who participated in the negotiations regarding the CBA. Farkas stated that he

> disagree[s] with Ms. Smith's statement that it was the 'intention of the parties to the CBA' that Norwegian pay the costs of the arbitration. I do not know what the intent of the NSU was in negotiating the CBA, but I do know what Norwegian's intent was.... The best evidence of what the parties intended is reflected by the negotiated language of the CBA itself, which does not contain any such allocation of costs but is silent when the seafarer is represented by non-NSU counsel.... It was the inten-

tion of Norwegian that both parties bear the costs of the arbitration equally.

(Affidavit of Daniel S. Farkas (D.E. 38–1) at ¶¶ 5–7.)

The Court finds that the CBA does not require NCL to pay all costs associated with the arbitration. By its plain language, the CBA requires NCL to pay all costs associated with an arbitration proceeding in a dispute between (1) the NSU and NCL, or (2) NCL and a seafarer represented by the NSU. (CBA, Art. 8, ¶ 7(e).) Neither of those scenarios is presented by this case, as Plaintiff is represented by non-NSU counsel. Accordingly, NCL's refusal to pay all costs associated with the arbitration does not constitute an anticipatory breach of the agreement, and is not a basis for precluding its enforcement. The allocation of arbitration costs is a proper subject for the arbitrator.

## B. Choice of Law and Forum Selection

 Finally, Plaintiff argues that if the Court compels arbitration, it should order arbitration under American law in Miami. (Response at 16.) As previously noted, the Employment Agreement and the CBA both designate the arbitral forum as the "Seaman's country of citizenship," which, in this case, is Nicaragua. (Employment Agreement at ¶ 12; CBA at 20.) Furthermore, the Employment Agreement designates the "law of the flag state of the vessel," here, the Bahamas, as "[t]he substantive law to be applied to the arbitration." (Employment Agreement at ¶ 12.) "We will not invalidate choice[-of-forum or choice-of-law] clauses ... simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States." *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1297 (11th Cir.1998). "Instead, we will declare unen-

forceable choice clauses only when the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair." *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1360–61 (2d Cir.1993); *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 958 (10th Cir.1992)); *see also Lindo,* 652 F.3d at 1271.

Plaintiff has failed to offer any evidence that Bahamian law is unreasonable or that it will not provide her with adequate remedies for her claims. In fact, she has not even *alleged* that the remedies available under Bahamian law are inadequate (or even less favorable) than under American law. Plaintiff merely cites to *Alvites v. Carnival Corp.,* No. 11–23360–CIV (S.D.Fla. Nov. 9, 2011), a case in which the court granted the defendant's Motion to Compel Arbitration in part but severed the foreign choice-of-law clause from the employment agreement, ordering the arbitrator to apply U.S. statutory law.[2]

In *Alvites,* a seaman was injured in the scope of his employment aboard Carnival's Miracle vessel. *Id.* at 2. Pursuant to the arbitration clause contained in the parties' "Seafarer's Agreement," all disputes were to be "resolved in accordance with the laws of the flag of the vessel on which Seafarer is assigned at the time the cause of action accrues," which, in that case, was Panama. *Id.* The Court noted that "[w]ithin this very context, this Court has held on numerous occasions that arbitration agreements should be upheld where possible, but that certain choice of law provisions may be unenforceable." *Id.* at 4 (citing *Meneses v. Carnival Corp.,* 731 F.Supp.2d 1332 (S.D.Fla.2010); *Orozco v. Princess Cruise Line, Ltd.,* Case No. 10–23276, 2010 WL 3942854 (S.D.Fla. Oct. 7, 2010)). The Court concluded

> that arbitration is ... appropriate so long as the arbitrator applies American statutory law to claims sounding in American law. This result ensures that Plaintiff will suffer no prejudice from arbitrating in another jurisdiction, as his claims for Jones Act Negligence ... and the like will be honored in accordance with U.S. law.

*Id.* at 4. However, the court did not explain why the choice of law provision was unenforceable, and the cases to which it cites for support either rely on bad law or are distinguishable.

First, *Meneses* relies entirely on *Thomas v. Carnival Corp.,* 573 F.3d 1113 (11th Cir.2009), to conclude that the foreign choice-of-law provision at issue was unenforceable as against public policy because it deprived the plaintiff of his U.S. statutory remedies under the Jones Act. 731 F.Supp.2d at 1335. However, the Eleventh Circuit abrogated *Thomas* in *Lindo,* holding that public policy is not a valid defense to enforcement of an arbitration agreement. *See Maxwell v. NCL (Bahamas), Ltd.,* 454 Fed.Appx. 709, 710 (11th Cir.2011). Thus, *Meneses* is no longer good law. Second, *Orozco,* is entirely distinguishable in that the defendant *waived* the choice-of-law provision and *stipulated* to arbitrating under American law. 2010 WL 3942854, at *2. Accordingly, *Alvites* does not support Plaintiff's argument.

In sum, Plaintiff has failed to establish that "the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair." *Lipcon,* 148 F.3d at 1297 (citations omitted). As such, the parties' forum-selection and choice-of-law provisions are enforceable.

---

**2.** Plaintiff cites to no authority for severing the forum-selection clause.

## III. Conclusion

The Court concludes that: (1) pursuant to *Bautista* and *Lindo,* the arbitration clause in Plaintiff's Employment Agreement is enforceable; (2) NCL's refusal to pay all costs associated with arbitration does not amount to an anticipatory breach of the agreement rendering the agreement unenforceable; and (3) Plaintiff has failed to demonstrate that the choice-of-law and/or forum-selection clause provide her an inadequate remedy.

Defendant's Motion to Compel Arbitration does not request any further relief in the form of a Stay pending arbitration or a Dismissal of the Complaint. Pursuant to 9 U.S.C. section 3, a court referring a dispute to arbitration "shall **on application of one of the parties** stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...." (Emphasis added). Neither party has requested a stay of the proceedings, and in light of the agreement to arbitrate the claims, the Court sees no reason to retain jurisdiction over the matter. As illustrated by *Lindo,* a district court may properly dismiss a complaint contemporaneous with compelling arbitration. 652 F.3d at 1287.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendants Motion to Compel Arbitration (D.E. 24) is **GRANTED;**

2. Plaintiff's Complaint (D.E. 1–3) is **DISMISSED WITH PREJUDICE;**

3. All pending motions are DENIED as moot; and

4. This case is **CLOSED.**