**LEVITON MANUFACTURING COMPANY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 73–1152.

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1973.

Decided Nov. 8, 1973.

Richard W. Zacks, Providence, R. I., with whom Vernon C. Stoneman, Stoneman, Chandler & Miller, Boston, Mass., and Winograd, Shine & Zacks, Providence, R. I., were on brief, for petitioner.

Charles N. Steele, Atty., Washington, D. C., with whom Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Asst. Gen. Counsel, and Joseph A. Oertel, Atty., Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

In this case Leviton Manufacturing Company, Inc. seeks review of a Labor Board order based on findings that Leviton violated § 8(a)(1) of the Act by discharging four of its employees.[1] The Board countered with a cross-petition for enforcement. For the reasons set forth below, we set aside the Board's order as not supported by substantial evidence on the record as a whole and deny its cross-petition for enforcement.

Until July 1970 the four employees in question—Mary Malstrom, Winifred Henault, Ruth Johnson, and Leo Johnson (Ruth Johnson's son)—held elected or appointed positions in the union local which represents Leviton's Warwick, R.I. plant.[2] Malstrom served as business manager of the local, a full-time elected office for which she was on continuing leave of absence from Leviton. Henault was an elected member of the union's executive board, and Malstrom had appointed her chief steward. Ruth Johnson was also an elected member of the executive board, and Malstrom had appointed her steward and editor of the union newspaper. Leo Johnson was an appointed steward. In a regularly-scheduled election held on June 6, 1970, Malstrom ran for reelection as business manager and the three other employees ran for executive board positions, but only Henault was successful. Upon appeal by the losing candidates, higher union authorities set aside this election. But in a second election held on July 25, 1970, all four employees were defeated and none were appointed to any union positions. Malstrom returned to work in the Leviton plant.

Following this change in union leadership, a series of events occurred which form the substance of the record in the instant case. First, between June 29 and December 22, 1970, Malstrom, Henault and Ruth Johnson jointly or individually filed a total of eight grievances and three "complaints"[3] with Leviton and three additional charges with the Board. All fourteen accusations claimed that Leviton or the union had discriminated against these three women in various ways. But only one, a grievance filed on behalf of Ruth Johnson, was found to have even the slightest merit.[4]

1. Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1) (1970) reads:
   "(a) It shall be an unfair labor practice for an employer—
      (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7 of the Act]."
Section 7, 29 U.S.C. § 157 (1970) reads in pertinent part:
   "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ."

2. Local 1274, International Brotherhood of Electrical Workers, AFL–CIO.

3. The parties have employed the term "complaint" to refer to charges which Malstrom, Henault and Ruth Johnson filed directly with the company without going through the union in accordance with normal grievance procedure.

4. In this grievance, dated August 17, 1970, Ruth Johnson contended that two other work sections were getting preferential treatment

All three charges filed with the Board were rejected for lack of substantiating evidence.[5]

Second, according to testimony by both company and union officials, these three women engaged in a year-long campaign of harassment and on-the-job truculence directed toward their immediate supervisors and the new union leaders. This testimony included several incidents involving obscene gestures and profane language. There was also testimony that Malstrom phoned the wife of a Leviton official to report a supposed affair between him and a married female employee. There was testimony, although of hearsay character, that Malstrom also threatened a work supervisor that she would take his house from him, apparently referring to an impending civil action she planned to file. Indeed, company officials learned that the union stewards deliberately avoided the department Malstrom worked in so as to avoid continuing verbal abuse. At the hearing before the trial examiner Malstrom, Henault, and Ruth Johnson denied many of these incidents, although Malstrom claimed lapses of memory with respect to several other incidents in which she was involved. In addition to the above, during the summer of 1971 Leo Johnson received three successive warnings from his supervisors that his work was unsatisfactory. Johnson was present but not called to testify at the hearing. No testimony, however, linked Leo Johnson with the incidents of harassment attributed to the three women.

Finally, on August 11, 1971, Malstrom, Henault, Ruth Johnson and Leo Johnson filed a civil action in the United States District Court for the District of Rhode Island. Named as defendants were Leviton, the union, and sixteen individual company officials and union officers. The complaint alleged that the company and the union conspired to oust the four plaintiffs from their former union positions by improperly supporting the new union officers in the June and July elections. They sought aggregate actual damages of $165,000 plus an additional $1,900,000 in "exemplary" damages. This action was dismissed on the pleadings for failure to allege a basis for federal court jurisdiction.[6] No appeal was taken from this dismissal, and no amended pleadings were filed.

A week after the filing of the civil action, Leviton fired Malstrom, Henault, and Ruth Johnson because of their "continuous harassment and aggravation of . . . fellow employees and management." A day later, Leo Johnson was also fired. The stated reason for his discharge was continued poor work.

Responding to a charge filed by the union, the General Counsel issued a complaint against Leviton asserting violations of both § 8(a)(1) and § 8(a)(3)[7]

---

from the company in the furnishing of raw materials, thus denying her section an equal opportunity to meet incentive quotas. The company's response did not concede discrimination against Ruth Johnson's shift, but merely promised some changes to assure that no advantage would be given to other sections.

5. The third charge, filed by Malstrom and Ruth Johnson on October 12, 1970, alleged that the union refused to process any more of their grievances. The union had by this time processed five grievances for the women during the preceding three months. In refusing to issue a complaint on this charge, the Board's regional director found that although the union had at some point indicated it would no longer process grievances for the women, the union thereafter assured them that it would continue to do so. Indeed, between the date the charge was filed and the date of the regional director's response, the

union processed two more grievances for Malstrom and one for Henault.

6. As a possible alternative ground for dismissing the action, the district court suggested that both federal and state court jurisdiction had been preempted by Congress's assignment of such cases to the Board. *See* San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244, 246, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *But see* Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 305 & n. 2, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) (Douglas, J., dissenting).

7. Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3) (1970), reads in part:
   "(a) It shall be an unfair labor practice for an employer—
   (3) by discrimination in regard to hire or tenure of employment or any term or

of the Act. At a hearing before the trial examiner,[8] company officials conceded that they took into account the filing of the August 11 civil action in deciding to dismiss the three women. The company claimed that the suit was brought in bad faith and represented the "final straw" in the three women's efforts to win back their former union positions by provoking dissension in the Leviton plant. Company officials denied, however, that Leo Johnson's participation in the August 11 law suit was the cause of his dismissal, and insisted that the decision as to him was separately made and would have occurred whether or not he had joined in the suit.

The trial examiner recommended dismissal of the Labor Board complaint, finding as a fact that the August 11 civil action was brought in bad faith and thus did not constitute a concerted employee activity within the protection of § 7 of the Act. The Board, however, in a 2–1 decision, reversed the trial examiner and found that the civil action was brought in good faith.[9] The Board further found that the filing of the civil action was the reason for Leo Johnson's dismissal. It thus concluded that the § 7 rights of all four employees had been interfered with in violation of § 8(a)(1). No findings were made with respect to the § 8(a)(3) charges.

█ Reviewing the Board's decision, we start with the proposition that the filing of a labor related civil action by a group of employees is ordinarily a concerted activity protected by § 7, unless the employees acted in bad faith. *See* Socony Mobil Oil Co. v. NLRB, 357 F.2d

662, 663–664 (2d Cir. 1966) (per curiam) (employee suspended after processing safety complaint with Coast Guard); *cf.* Walls Mfg. Co. v. NLRB, 116 U.S. App.D.C. 140, 321 F.2d 753, 754, cert. denied, 375 U.S. 923, 84 S.Ct. 265, 11 L.Ed.2d 166 (1963) (employee fired after complaining to state health department about sanitary conditions).

█ In the instant case, therefore, the crucial issue is whether the August 11 suit was brought in good faith and thus constituted protected activity.[10] We reverse the Board's finding on this issue because we cannot conscientiously find that the evidence supporting its decision is substantial, when viewed in the light that the record in its entirety furnishes. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The trial examiner found as a fact that the civil action "had one purpose only—to force everybody—I.B.E.W. Second District, Local 1274, the duly elected local officials and all of management—to disregard the people's choices and to restore Malstrom, Henault, Ruth Johnson and Leo Johnson to union office." In reaching this conclusion, the examiner relied upon the testimony of company officials and employees which painted an overall picture of bitter former leaders, ousted from their positions of prominence, striking back through in-plant incidents of hostility and harassment coupled with a series of grievances and charges alleging discrimination against them. It is clear that the examiner disbelieved the denials of Malstrom, Henault and Ruth Johnson. In determin-

---

condition of employment to encourage or discourage membership in any labor organization."

8. The hearing was held April 26–28, 1972. After August 19, 1972, trial examiners acquired the new title of "administrative law judge."

9. Chairman Miller, dissenting, agreed with the trial examiner that the suit was merely part of "a campaign of harassment caused by personal spite."

10. Assuming good faith in the filing of the suit, the fact that it may have been groundless or that it was later dismissed on the pleadings would not in itself remove the activity from the protection of § 7. *Cf.* Walls Mfg. Co. v. NLRB, *supra*, 321 F.2d at 754. Similarly, the fact that Leviton may sincerely have believed the suit to have been brought in bad faith would not remove the activity from § 7 if in fact the suit was brought in good faith. *See* NLRB v. Burnup & Sims, Inc., 379 U.S. 21, 23–24, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964).

ing that the civil action was brought in bad faith, the examiner also noted the vagueness of the complaint itself. The suit, the prior grievances, and the incidents of misbehavior in the plant were all found to "[bespeak] a grim determination to 'get even' with the world in general for having lost the union elections."

In reversing the examiner's finding of bad faith, the majority of the Board ignored the credibility aspects of the case and essentially relied on only two factors. According to the Board, the record shows that "many" of the grievances filed by the employees prior to the suit produced "beneficial results." Second, the Board claimed that because all fourteen of the grievances, complaints and charges filed by the employees were disposed of at last six months prior to the filing of the civil suit, they were too remote in time to serve as evidence of continuing bad faith. For a number of reasons we find that these two objections in no way counteract the compelling evidence of bad faith by the employees in question which was presented by the company and credited by the trial examiner.

We have examined the record with care, paying particular attention to the series of grievances filed by the employees prior to the civil suit and their disposition, and can find only one which had even arguably beneficial results. This was the grievance filed by Ruth Johnson on the furnishing of raw materials, which we noted earlier. Meanwhile, the Board has failed to deal with the fact that virtually all fourteen charges of discrimination were either flatly denied by the company or dismissed for lack of evidence by the Board itself. While it is true that mere lack of merit in a complaint does not ordinarily establish bad faith, lack of merit in fourteen successive grievances, complaints and charges filed within a space of only six months strongly raises that inference.

With regard to the supposed remoteness in time between the fourteen earlier accusations and the civil action, we note first that the Board has not hesitated in the past to consider events occurring six months earlier in determining motivation. *See, e. g.*, General Motors Acceptance Corp. v. NLRB, 476 F.2d 850, 854 n. 7 (1st Cir. 1973) (use of prior events to establish anti-union animus on part of employer). More important, in asserting this lack of connection between the prior actions and the suits, the Board has seemingly ignored the considerable evidence in the record of the three employees' continued in-plant misbehavior for the full year between their ouster from union office and the filing of the suit.

█ Moreover, where the issue is the motive of the employees who filed the law suit, the trial examiner's credibility findings are entitled to great weight. Here, the trial examiner clearly disbelieved the three employees' denials of harassment. "[E]vidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion." Universal Camera Corp. v. NLRB, *supra*, 340 U.S., at 496, 71 S.Ct. at 469. The examiner's contrary findings are most important when credibility is important in the case. *Id.* Indeed, it is the Board's stated policy not to overturn the examiner's resolutions on credibility unless the "clear preponderance of all the relevant evidence" points otherwise. *See* Smith & Wesson, 174 N.L.R.B. 1040 n. 1 (1969), enforced, NLRB v. Smith & Wesson, 424 F.2d 1072 (1st Cir. 1970). Yet here the Board has not responded at all to the credibility aspect of the trial examiner's findings and has seemingly rejected out of hand the testimony which he credited as to the employees' continued harassment activities.

Finally, in determining that the civil suit was brought in good faith, the Board made no mention of the vagueness of the allegations of the fact that a similar complaint had been dismissed by its

own General Counsel for lack of evidence a year earlier, or of the fact that the complaint was later dismissed for failure to allege a basis for jurisdiction, with no amended pleadings being filed thereafter.

We can appreciate the desire of the Board to protect the right of employees to seek legal relief in good faith. But on this record, including the findings of the trial examiner, we cannot find substantial evidence to support the conclusion that the suit filed by the four employees in question was protected activity. It follows, therefore, that their discharge did not constitute a violation of § 8(a)(1).

The petition for review is granted. The Board's order may be set aside and the Board's cross-application for the enforcement of said order against the petitioner is denied.