OPINION
THOMAS, Chief Judge:
In this case, we consider whether an employer violates the National Labor Relations Act by requiring employees to sign an agreement precluding them from bringing, in any forum, a concerted legal claim regarding wages, hours, and terms and conditions of employment. We conclude that it does, and vacate the order of the district court compelling individual arbitration.
I
Stephen Morris and Kelly McDaniel worked for the accounting firm Ernst & Young. As a condition of employment, Morris and McDaniel were required to sign agreements not to join with other employees in bringing legal claims against the company. This “concerted action waiver” required employees to (1) pursue legal claims against Ernst & Young exclusively through arbitration and (2) arbitrate only as individuals and in “separate proceedings.” The effect of the two provisions is that employees could not initiate concerted legal claims against the company in any forum — in court, in arbitration proceedings, or elsewhere.
Nonetheless, Morris brought a class and collective action against Ernst & Young in federal court in New York, which McDaniel later joined. According to the complaint, Ernst & Young misclassified Morris and similarly situated employees. Morris alleged that the firm relied on the misclassi-fication to deny overtime wages in violation of the Fair Labor Standards Act (“FLSA”), 29 U.S.C.A. § 201 et seq., and California labor laws.
The case was eventually transferred to the Northern District of California. There, Ernst & Young moved to compel arbitration pursuant to the agreements signed by Morris and McDaniel. The court ordered individual arbitration and dismissed the case. This timely appeal followed.
Morris and McDaniel argue that their agreements with the company violate federal labor laws and cannot be enforced. They claim that the “separate proceedings” clause contravenes three federal statutes: the National Labor Relations Act (“NLRA”), 29 U.S.C. §§ 151 et. seq., the Norris LaGuardia Act, 29 U.S.C. § 101 et *980 seq., and the FLSA. Relevant here, Morris and McDaniel rely on a determination by the National Labor Relations Board (“NLRB” or “Board”) that concerted action waivers violate the NLRA. D.R. Horton, 357 NLRB No. 184 (2012) (“Horton I”), enf. denied 737 F.3d 344 (5th Cir. 2013) (“Horton IF’); see also Murphy Oil USA, Inc., 361 NLRB No. 72 (2014) (“Murphy Oil I”), enf. denied 808 F.3d 1013 (5th Cir. 2015) (“Murphy Oil II”).
We have jurisdiction under 28 U.S.C. § 1331 and review the district court’s order to compel arbitration de novo. Balen v. Holland Am. Line, Inc., 583 F.3d 647, 652 (9th Cir. 2009).
II
This case turns on a well-established principle: employees have the right to pursue work-related legal claims together. 29 U.S.C. § 157; Eastex, Inc. v. NLRB, 437 U.S. 556, 566, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978). Concerted activity— the right of employees to act together — is the essential, substantive right established by the NLRA. 29 U.S.C. § 157. Ernst & Young interfered with that right by requiring its employees to resolve all of their legal claims in “separate proceedings.” Accordingly, the concerted action waiver violates the NLRA and cannot be enforced.
A
The Supreme Court has “often reaffirmed that the task of defining the scope of [NLRA rights] ‘is for the Board to perform in the first instance as it considers the wide variety of cases that come before it.’ ” NLRB v. City Disposal Sys. Inc., 465 U.S. 822, 829, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984) (quoting Eastex, 437 U.S. at 568, 98 S.Ct. 2505). “[C]onsiderable deference” thus attaches to the Board’s interpretations of the NLRA. Id. Thus, we begin our analysis with the Board’s treatment of similar contract terms.
The Board has concluded that an employer violates the NLRA
when it requires employees covered by the Act, as a condition of their employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any forum, arbi-tral or judicial.
Horton I, 357 NLRB No. 184, slip op. at 1.
The Board’s determination rested on two precepts. First, the Board interpreted the NLRA’s statutory right “to engage in ... concerted activities for the purpose of ... mutual aid or protection” to include a right “to join together to pursue workplace grievances, including through litigation.” Id: at 2 (interpreting 29 U.S.C. § 157). Second, the Board held that an employer may not circumvent the right to concerted legal activity by requiring that employees resolve all employment disputes individually. Id. at 4-5, 13 (interpreting 29 U.S.C. § 158). In other words, employees must be able to initiate a work-related legal claim together in some forum, whether in court, in arbitration, or somewhere else. Id. A concerted action waiver prevents this: employees may only resolve disputes in a single forum — here, arbitration — and they may never do so in concert. Id.[1]
The Supreme Court has instructed us to review the Board’s interpretations of the NLRA under the familiar two-step *981 framework set forth in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 & n.9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Lechmere, Inc. v. NLRB, 502 U.S. 527, 536, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992) (Chevron framework applies to NLRB constructions of the NLRA). The Board’s reasonable interpretations of the NLRA command deference, while the Board’s remedial preferences and interpretations of unrelated statutes do not. Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 143-44, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002).[2]
Under Chevron, we first look to see “whether Congress has directly spoken to the precise question at issue.” Chevron, 467 U.S. at 842, 104 S.Ct. 2778. In analyzing Congressional intent, we employ the “traditional tools of statutory construction.” Id. at 843 & n. 9, 104 S.Ct. 2778. We not only look at the precise statutory section in question, but we also analyze the provision in the context of the governing statute as a whole, presuming congressional intent to create a ‘“symmetrical and coherent regulatory scheme.’ ” Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 569, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)). If we conclude that “the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778.
In this case, we need go no further. The intent of Congress is clear from the statute and is consistent with the Board’s interpretation.
To determine whether the NLRA permits a total waiver on concerted legal activity by employees, we begin with the words of the statute. The NLRA establishes the rights of employees in § 7. It provides that:
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection
29 U.S.C. § 157.
Section 8 enforces these rights by making it “an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7].” 29 U.S.C. § 158; see NLRB v. Bighorn Beverage, 614 F.2d 1238, 1241 (9th Cir. 1980) (describing relationship between sections; § 7 establishes rights and § 8 enforces them).
Section 7 protects a range of concerted employee activity, including the right to “seek to improve working conditions through resort to administrative and judicial forums.” Eastex, 437 U.S. at 566, 98 S.Ct. 2505; see also City Disposal Sys., 465 U.S. at 835, 104 S.Ct. 1505 (“There is no indication that Congress intended to limit [§ 7] protection to situations in which an employee’s activity and that of his fellow employees combine with one another in any particular way.”). Therefore, “a lawsuit filed in good faith by a group of employees to achieve more favorable terms *982 or conditions of employment is ‘concerted activity’ under § 7 of the National Labor Eolations Act.” Brady v. NFL, 644 F.3d 681, 673 (8th Cir. 2011). So too is the “filing by employees of a labor related civil action.” Altex Ready Mixed Concrete Corp. v. NLRB, 542 F.2d 295, 297 (5th Cir. 1976). Courts regularly protect employees’ right to pursue concerted work-related legal claims under § 7. Mohave Elec. Coop., Inc. v. NLRB, 206 F.3d 1183, 1189 (D.C. Cir. 2000) (“filing a civil action by a group of employees is protected activity” under § 7) (internal quotation marks and citation omitted); Leviton Mfg. Co. v. NLRB, 486 F.2d 686, 689 (1st Cir. 1973) (same).
It is also well-established that the NLRA establishes the right of employees to act in concert: “Employees shall have the right ... to engage in other concerted activities for the purpose of collective bargaining or other mutual aid and protection.” 29 U.S.C. § 157 (emphasis added). Concerted action is the basic tenet of federal labor policy, and has formed the core of every significant federal labor statute leading up to the NLRA. City Disposal Sys., 465 U.S. at 834-35, 104 S.Ct. 1505 (describing history of the term “concert” in statutes affecting federal labor policy). Taken together, these two features of the NLRA establish the right of employees to pursue work-related legal claims, and to do sc together. The pursuit of a concerted work-related legal claim “clearly falls within the literal wording of § 7 that ’[e]mploy-ees shall have the right ... to engage in ... concerted activities for the purpose of ... mutual aid or protection.” NLRB v. J. Weingarten, Inc., 420 U.S. 251, 260, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975) (quoting 29 U.S.C. § 157). The intent of Congress in § 7 is clear and comports with the Board’s interpretation of the statute.[3]
The same is true for the Board’s interpretation of § 8’s enforcement provisions. Section 8 establishes that “[i]t shall be an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157.” 29 U.S.C. § 158. A “separate proceedings” clause does just that: it prevents the initiation of any concerted work-related legal claim, in any forum. Preventing the exercise of a § 7 right strikes us as “interference” within the meaning of § 8. Thus, the Board’s determination that a concerted action waiver violates § 8 is no surprise. And an employer violates § 8 a second time by conditioning employment on signing a concerted action waiver. Nat’l Licorice Co. v. NLRB, 309 U.S. 350, 364, 60 S.Ct. 569, 84 L.Ed. 799 (1940) (“Obviously employers cannot set at naught the National Labor Relations Act by inducing their workmen to agree” to waive the statute’s substantive protections); see Retlaw Broad. Co., 310 NLRB no. 160, slip op. at 14 (1993), enforced, 53 F.3d 1002 (9th Cir. 1995) (section 8 prohibits conditioning employment on waiver of § 7 right).[4] Again, we need *983 not proceed to the second step of Chevron because the intent of Congress in § 8 is clear and matches the Board’s interpretation.
Section 8 has long been held to prevent employers from circumventing the NLRA’s protection for concerted activity by requiring employees to agree to individual activity in its place. National Licorice, for example, involved a contract clause that discouraged workers from redressing grievances with the employer “in any way except personally.” 309 U.S. at 360, 60 S.Ct. 569. This clause violated the NLRA. Id. at 361, 60 S.Ct. 569. The individual dispute resolution practice envisioned by the contract, and required by the employer, represented “a continuing means of thwarting the policy of the Act.” Id.
Similarly, N.L.R.B. v. J.H. Stone & Sons, 125 F.2d 752 (7th Cir. 1942), concluded that individual dispute resolution requirements nullify the right to concerted activity established by § 7:
By the clause in dispute, the employee bound himself to negotiate any differences with the employer and to submit such differences to arbitration. The result of this arbitration was final. Thus the employee was obligated to bargain individually and, in ease of failure, was bound by the result of arbitration. This is the very antithesis of collective bargaining.
Id. at 756.
The “separate proceedings” clause in this case is no different. Under the clause, the employee is obligated to pursue work-related claims individually and, no matter the outcome, is bound by the result. This restriction is the “very antithesis” of § 7’s substantive right to pursue concerted work-related legal claims. For the same reason, the Seventh Circuit recently concluded that “[a] contract that limits Section 7 rights that is agreed to as a condition of continued employment qualifies as ‘interfering] with’ or ‘restraining] ... employees in the exercise’ of those rights in violation of Section 8(a)(1).” Lewis v. Epic Sys. Corp., 823 F.3d 1147, 1155 (7th Cir. 2016). Indeed, § 7 rights would amount to very little if employers could simply require their waiver.
In sum, the Board’s interpretation of § 7 and § 8 is correct. Section 7’s “mutual aid or protection clause” includes the substantive right to collectively “seek to improve working conditions through resort to administrative and judicial forums.” Eastex, 437 U.S. at 566, 98 S.Ct. 2505; accord City Disposal Sys., 465 U.S. at 834-35, 104 S.Ct. 1505. Under § 8, an employer may not defeat the right by requiring employees to pursue all work-related legal claims individually. See J.I. Case Co. v. NLRB, 321 U.S. 332, 337, 64 S.Ct. 576, 88 L.Ed. 762 (1944) (“Individual contracts ... may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act”). The NLRA is unambiguous, and there is no need to proceed to the second step of Chevron.[5]
Applied to the Ernst & Young contract, § 7 and § 8 make the terms of the concerted action waiver unenforceable. The “separate proceedings” clause prevents concerted activity by employees in arbitration proceedings, and the requirement that employees only use arbitration *984 prevents the initiation of concerted legal action anywhere else. The result: interference with a protected § 7 right in violation of § 8. Thus, the “separate proceedings” terms in the Ernst & Young contracts cannot be enforced.[6]
B
The Federal Arbitration Act (“FAA”) does not dictate a contrary result. 1'he “separate proceedings” provision in this case appears in an agreement that directs employment-related disputes to arbitration. But the arbitration requirement is not the problem. The same provision in a contract that required court adjudication as the exclusive remedy would equally violate the NLRA. The NLRA obstacle is a ban on initiating, in any forum, concerted legal claims — not a ban on arbitration.
The FAA “was enacted in 1925 in response to widespread judicial hostility to arbitration agreements.” AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). In relevant part, it provides that,
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2. The Act requires courts to “place arbitration contracts ‘on equal footing with all other contracts,’ ” DIRECTV, Inc. v. Imburgia, — U.S.-, 136 S.Ct. 463, 468, 193 L.Ed.2d 365 (2015) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)), and to “enforce them according to their terms,” Concepcion, 563 U.S. at 339, 131 S.Ct. 1740. Not all contract terms receive blanket enforcement under the FAA, however. The FAA’s
saving clause permits agreements to arbitrate to be invalidated by “generally applicable contract defenses, such as fraud, duress, or unconscionability,” but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.
Id. (quoting Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). Accordingly, when a party raises a defense to the enforcement of an arbitration provision, a court must determine whether the defense targets arbitration contracts without “due regard ... to the federal policy favoring arbitration.” DIRECTV, 136 S.Ct. at 471 (quoting Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).
 The contract defense in this case does not “derive [its] meaning from the fact that an agreement to arbitrate is at issue.” Concepcion, 563 U.S. at 339, 131 S.Ct. 1740. An agreement to arbitrate work-related disputes does not conflict with the NLRA. Indeed, federal labor policy favors and promotes arbitration. United *985 Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).
The illegality of the “separate proceedings” term here has nothing to do with arbitration as a forum. It would equally violate the NLRA for Ernst & Young to require its employees to sign a contract requiring the resolution of all work-related disputes in court and in “separate proceedings.” The same infirmity would exist if the contract required disputes to be resolved through casting lots, coin toss, duel, trial by ordeal, or any other dispute resolution mechanism, if the contract (1) limited resolution to that mechanism and (2) required separate individual proceedings. The problem with the contract at issue is not that it requires arbitration; it is that the contract term defeats a substantive federal right to pursue concerted work-related legal claims.[7]
When an illegal provision not targeting arbitration is found in an arbitration agreement, the FAA treats the contract like any other; the FAA recognizes a general contract defense of illegality.[8] 9 U.S.C. § 2; Concepcion, 563 U.S. at 339, 131 S.Ct. 1740. The term may be excised, or the district court may decline enforcement of the contract altogether. See 19 Richard Lord, 8 Williston on Contracts § 19:70 (4th ed. 1990) (“Illegal portions of a contractual agreement may be severed if the illegal provision is not central to the parties’ agreement.”); see also Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425, 433 (9th Cir. 2015) (“ ‘generally applicable’ contract defense” is “preserved by § 2’s saving clause”).
Crucial to today’s result is the distinction between “substantive” rights and “procedural” rights in federal law. The Supreme Court has often described rights that are the essential, operative protections of a statute as “substantive” rights. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 29, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). In contrast, procedural rights are the ancillary, remedial tools that help secure the substantive right. See id.; CompuCredit Corp. v. Greenwood, — U.S.-, 132 S.Ct. 665, 671, 181 L.Ed.2d 586 (2012) (describing difference between statute’s “guarantee” and provisions contemplating ways to enforce the core guarantee).[9]
The difference is key, because substantive rights cannot be waived in arbitration agreements. This tenet is a fundamental component of the Supreme Court’s arbitration jurisprudence: “[b]y agreeing to arbitrate a statutory claim, a *986 party does not forgo the substantive rights sfforded by the statute; it only submits to their resolution in an arbitral, rather than si judicial, forum.” Mitsubishi, 473 U.S. at 628, 105 S.Ct. 3346. Thus, if a contract term in an arbitration agreement “oper-s,te[s] ... as a prospective waiver of a party’s right to pursue statutory remedies for [substantive rights], we would have little hesitation in condemning the agreement.” Id. at 637, 105 S.Ct. 3346 n.19; see also Am. Exp. Co. v. Italian Colors Rest., — U.S. -, 133 S.Ct. 2304, 2310, 186 L.Ed.2d 417 (2013); Green Tree Fin. Corp.-Al. v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); Gilmer, 500 U.S. at 28, 111 S.Ct. 1647; Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 240, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).
The FAA does not mandate the enforcement of contract terms that waive substantive federal rights. Thus, when an arbitration.contract professes the v/aiver of a substantive federal right, the FAA’s saving clause prevents a conflict between the statutes by causing the FAA’s enforcement mandate to yield. See Epic Sys., 823 F.3d at 1159 (“Because the NLRA renders [the defendant’s] arbitration provision illegal, the FAA does not mandate its enforcement.”).[10]
The rights established in § 7 of the NLRA — including the right of employees to pursue legal claims together — are substantive. They are the central, fundamental protections of the Act, so the FAA does not mandate the enforcement of a contract that alleges their waiver. The text of the Act confirms the central role of § 7: that section establishes the “Right of employees as to organization.” 29 U.S.C. § 157 (emphasis added). No other provision of the Act creates these sorts of rights. Without § 7, the Act’s entire structure and policy flounder. For example, § 8 specifically refers to the “exercise of the rights guaranteed in section 157.” 28 U.S.C. § 158; Bighorn Beverage, 614 F.2d at 1241 (“Section 8(a)(1) of the Act implements [§ 7’s] guarantee”).
The Act’s other enforcement sections are similarly confused without the rights established in § 7. See, e.g., 29 U.S.C.§ 160 (providing powers of the Board to prevent interference with rights in § 7). There is no doubt that Congress intended for § 7 and its right to “concerted activities” to be the “primary substantive provision” of the NLRA. See Gilmer, 500 U.S. at 24, 111 S.Ct. 1647. For this reason, the right to concerted employee activity cannot be waived in an arbitration agreement.[11]
*987 The dissent ignores this fundamental component of the Supreme Court’s arbitration jurisprudence and argues that we must first locate a “contrary congressional command” before preventing the enforcement of an invalid contract term. But as the Seventh Circuit put it, “this argument puts the cart before the horse.” Epic Sys., 823 F.3d at 1156. Rather, “[bjefore we rush to decide whether one statute eclipses another, we must stop to see if the two statutes conflict at all.” Id. The saving clause in the FAA prevents the need for such a conflict.
The dissent and Ernst & Young insist that we must effectively ignore the saving clause and first search to see which of two statutes will “trump” the other. But this is not the way the Supreme Court has instructed us to approach statutory construction. Vimar Seguros y Reaseguros, S.A v. M/V Sky Reefer, 515 U.S. 528, 533, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995) (“[W]hen two statutes are capable of coexistence ... it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.” (citation omitted)). Nor is a hunt for statutory conflict the “single question” the Supreme Court has told us to ask when examining the FAA’s interaction with other federal statutes. Dissent at 994-95. Indeed, if we first had to locate a conflict between the FAA and other statutes, the FAA’s saving clause would serve no purpose, which cannot be the case. TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (“a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant” (citation omitted)); see Epic Sys., 823 F.3d at 1157 (holding that there is no inherent conflict between the FAA and the NLRA).[12] Instead, we join the Seventh Circuit in treating the interaction between the NLRA and the FAA in a very ordinary way: when an arbitration contract professes to waive a substantive federal right, the saving clause of the FAA prevents the enforcement of that waiver.[13]
Thus, the dissent’s citations to cases involving the waiver of procedural rights are misplaced. CompuCredit, for example, was a choice-of-judicial-forum case that addressed the waiver of procedural rights. In the Supreme Court’s words, the case concerned “whether claims under the [CROA] can proceed in an arbitrable forum.” 132 S.Ct. at 673. In today’s case, the issue is not whether any particular forum, including arbitration, is available but rather which substantive rights must be available within the chosen forum. And the Supreme Court has repeatedly held that the core, substantive “rights” created by federal law survive contract terms that purport their waiver. Such was the case in CompuCredit, where the Court concluded that the use of a judicial forum contemplated by the CROA could be waived so long as “the guarantee of the legal power to impose liability — is preserved.” 132 S.Ct. at 671 (emphasis in original). In other words, parties can choose their forums but they cannot contract away the basic guarantees of a federal statute.
Gilmer was also a judieial-ehoiee-of-fo-rum case that addressed the waiver of procedural rights. There the Supreme Court again distinguished between a waiv *988 able procedural right (to use a court for class claims rather than arbitration) and a nonwaivable substantive right (to be free from age discrimination). 500 U.S. at 27-29, 111 S.Ct. 1647. Not surprisingly, the Court held that the procedural right to use class proceedings in federal court could be waived. Id. at 32, 111 S.Ct. 1647.[14]
Italian Colors, as well, was a judicial forum case that endorsed the distinction between a statute’s basic guarantee and the various ways litigants may go about ■vindicating it. The Court was careful to distinguish between the matters “involved in proving a statutory remedy” and whether an agreement “constitute^] the elimination of the right to pursue that remedy.” Italian Colors, 133 S.Ct. at 2311. The plaintiffs objected that it would be infeasible to pursue their antitrust claims against the defendant without the ability to form a class. The Court rejected this argument, noting that so long as the substantive federal right remains — there, the right to pursue antitrust claims in some forum— then the arbitration agreements would be enforced according to their terms. Id. at 2310-12.
The dissent misreads these cases to require a conflict between the FAA and the substantive provisions of other federal statutes. But as the Supreme Court has repeatedly made clear, there is a limiting principle built into the FAA on what may be waived in arbitration: where substantive rights are at issue, the FAA’s saving clause works in conjunction with the other statute to prevent conflict.
The interaction between the NLRA and the FAA makes this case distinct from other FAA enforcement challenges in at least three additional and important ways.
First, because a substantive federal right is waived by the contract here, it is accurate to characterize its terms as “illegal.” The dissent objects that a term in an arbitration contract can only be “illegal” if Congress issues a contrary command specifically referencing arbitration. But then it proceeds to cite cases where no substantive federal rights were waived. In those cases, the conflict between contract terms and federal law was less direct. In Italian Colors, for example, the Court concluded that the antitrust laws establish no statutory right to pursue concerted claims: the acts “make no mention of class actions.” Id. at 2309. In contrast, the federal statutory regime in this case does exactly the opposite. Where the antitrust laws are silent on the issue of concerted legal redress, the NLRA is unambiguous: concerted activity is the touchstone, and a ban on the pursuit of concerted work-related legal claims interferes with a core, substantive right.
Second, the enforcement defense in this case has nothing to do with the adequacy of arbitration proceedings. In Concepcion and Italian Colors, the Court held that arguments about the adequacy of arbitration necessarily yield to the policy of the FAA. Concepcion, 563 U.S. at 351, 131 S.Ct. 1740; Italian Colors, 133 S.Ct. at 2312. The Court “specifically rejected the argument that class arbitration [is] necessary to prosecute claims ‘that might otherwise slip through the legal system.’ ” Italian Colors, 133 S.Ct. at 2312 (quoting Concepcion, 563 U.S. at 351, 131 S.Ct. 1740). Here, the NLRA’s prohibition on enforcing the “separate proceedings” clause has nothing to do with the adequacy of arbitration. The dissent and Ernst & Young attempt to read Concepcion for the proposition that concerted claims and arbitration are fundamentally inconsistent. But Concepcion makes no such holding. Con *989 cepcion involved a consumer arbitration contract, not a labor contract, and there was no federal statutory scheme that declared the contract terms illegal. 563 U.S. at 338, 131 S.Ct. 1740. The defense in that case was based on a judge-made state law rule. In contrast, the illegality of the contract term here follows directly from the NLRA. Arbitration between groups of employees and their employers is commonplace in the labor context. It would no doubt surprise many employers to learn that individual proceedings are a “fundamental” attribute of workplace arbitration. See also Gilmer, 500 U.S. at 32, 111 S.Ct. 1647 (noting that employer’s arbitration “rules also provide for collective proceedings”).[15]
Third, the enforcement defense in this case does not specially “disfavor” arbitration. The dissent makes dire predictions about the future of workplace arbitration if the “separate proceedings” clause is invalidated. However, our holding is not that arbitration may not be used in workplace disputes. Quite the contrary. Rather, our holding is simply that when arbitration or any other mechanism is used exclusively, substantive federal rights continue to apply in those proceedings. The only role arbitration plays in today’s case is that it happens to be the forum the Ernst & Young contract specifies as exclusive. The contract here would face the same NLRA •troubles if Ernst & Young required its employees to use only courts, or only rolls of the dice or tarot cards, to resolve workplace disputes — so long as the exclusive forum provision is coupled with a restriction on concerted activity in that forum. At its heart, this is a labor law case, not an arbitration case.
Further, nothing in the Supreme Court’s recent arbitration case law suggests that a party may simply incant the acronym “FAA” and receive protection for illegal contract terms anytime the party suggests it will enjoy arbitration less without those illegal terms. We have already held that Concepcion supports no such argument:
The Supreme Court’s holding that the FAA preempts state laws having a “disproportionate impact” on arbitration cannot be read to immunize all arbitration agreements from invalidation no matter how unconscionable they may be, so long as they invoke the shield of arbitration. Our court has recently explained the nuance: “Concepcion outlaws discrimination in state policy that is unfavorable to arbitration.”
Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 927 (9th Cir. 2013) (quoting Mortensen v. Bresnan Commc’ns, LLC, 722 F.3d 1151, 1160 (9th Cir.2013)). Do not be misled. Arbitration is consistent with, and encouraged by, the NLRA following today’s opinion.
At bottom, the distinguishing features of today’s case are simple. The NLRA establishes a core right to concerted activity. Irrespective of the forum in which disputes are resolved, employees must be able to act in the forum together. The structure of the Ernst & Young contract prevents that. Arbitration, like any other forum for resolving disputes, cannot be structured so as to exclude all concerted employee legal claims. As the Supreme *990 Court has instructed, when “private contracts conflict with” the NLRA, “they obviously must yield or the Act would be reduced to a futility.” J.I. Case, 321 U.S. at 337, 64 S.Ct. 576.[16]
Ill
In sum, the “separate proceedings” provision of the Ernst & Young contract interferes with a substantive federal right protected by the NLRA’s § 7. The NLRA precludes contracts that foreclose the possibility of concerted work-related legal claims. An employer may not condition employment on the requirement that an employee sign such a contract.
It is “well established ... that a federal court has a duty to determine whether a contract violates the law before enforcing it.” Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 83, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). Because the district court’s order compelling arbitration was based, at least in part, on the separate proceedings provision, we must vacate the order and remand to the district court to determine whether the “separate proceedings” clause is severable from the contract. We take no position on whether arbitration may ultimately be required in this case.
In addition, because the contract’s conflict with the NLRA is determinative, we need not — and do not — reach plaintiffs alternative arguments regarding the Norris LaGuardia Act, the FLSA, or whether Ernst & Young waived its right to arbitration.[17]
REVERSED AND REMANDED.
Dissent by Judge IKUTA

. The contract in Horton I required all claims to be heard in arbitration and required the arbitrator to “hear only Employee’s individual claims.” Horton I, 357 NLRB No. 184, slip op. at 1. It also contained an express waiver of class or collective proceedings in arbitration. Id. Ernst & Young concedes that the "separate proceedings” term in the exclusive arbitration agreements here has the same effect.

. The Board has both rulemaking and adjudicative powers, 29 U.S.C. § 156, § 160, and it may authoritatively interpret the NLRA through either process. NLRB v. Bell Aerospace Co. Div. of Textron, 416 U.S. 267, 294, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974) (concluding that the Board may announce "new principles in an adjudicative proceeding”). Our analysis under Chevron does not extend to the Board's interpretation of statutes it does not administer, to the Board’s interpretation of Supreme Court cases, or to the Board’s remedial preferences.

. Eastex clarifies that concerted activity extends to judicial forums, and it does not limit concerted activity to any particular vehicle or mechanism. 437 U.S. at 556 & n.15, 98 S.Ct. 2505. Further, we reject the argument that the NLRA cannot protect a right to concerted legal action because Rule 23 class actions did not exist until after the NLRA was passed. See City Disposal Sys., 465 U.S. at 835, 104 S.Ct. 1505 (noting that the NLRA has forward-looking view of § 7 protections). Rule 23 is .lot the source of employee rights; the NLRA is. Eastex settles this question by expressly including concerted legal activity within the set of protected § 7 activities. 437 U.S. at 566, 98 S.Ct. 2505.

. In contrast, there was no § 8 violation in Johnmohammadi v. Bloomingdale’s, Inc. because the employee there could have opted out of the individual dispute resolution agreement and chose not to. 755 F.3d 1072, 1076 (9th Cir. 2014).

. Because congressional intent can be ascertained employing the usual tools of statutory construction, we do not proceed to step two of the Chevron analysis. However, if that analysis were undertaken, the only conclusion could be that "[t]he Board’s holding is a permissible construction of 'concerted activities for ... mutual aid or protection’ by the agency charged by Congress with enforcement of the Act.” Weingarten, 420 U.S. at 260, 95 S.Ct. 959 (quoting 29 U.S.C. § 157).

. Ernst & Young also argues for the first time on appeal that there is no evidence that Morris and McDaniel are statutory employees covered by the NLRA. This argument was not adequately raised before the district court and is therefore waived. See Solis v. Matheson, 563 F.3d 425, 437 (9th Cir. 2009). Likewise, we also reject the claim that the Board’s interpretations of the NLRA in Horton I and Murphy Oil I do not apply here because there was no NLRB proceeding or finding of an unfair labor practice. We agree with the agency's interpretation of the NLRA because it gives effect to Congress's intent. Our agreement has nothing to do with the procedural history of the cases from which the Board's interpretation arose.

. In contrast, the arbitration cases cited by the dissent and Ernst & Young involved litigants seeking to avoid an arbitral forum— their defenses targeted arbitration. Here, Morris and McDaniel seek to exercise substantive rights guaranteed by federal statute in some forum, including in arbitration.

. Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), is not to the contrary. Under Stolt, an arbitrator may not add to the terms of tin arbitration agreement, and therefore may not order class arbitration unless the contract provides for it Id. at 684, 130 S.Ct. 1758. This does not require a court to enforce an illegal term. Nor would Stolt prevent the district court, on remand, from severing the "separate proceedings” clause to bring the arbitration provision into compliance with the NLRA.

.The Age Discrimination in Employment Act ("ADEA”), for example, establishes a primary, substantive right against age discrimination. 29 U.S.C. § 623; Gilmer, 500 U.S. at 27, 111 S.Ct. 1647. It provides for collective proceedings as one way, among many, to secure that right. 29 U.S.C. § 626 (providing for "Recordkeeping, investigation, and enforcement” of the ADEA, including collective legal redress).

. Contrary to the suggestions of the dissent, the Supreme Court has repeatedly endorsed the distinctive roles of substantive and procedural rights in its recent arbitration case law. As recently as Italian Colors, the Supreme Court has held that the key question for courts assessing a statutory rights claim arising from an arbitration agreement is whether the agreement “constituted the elimination of the right to pursue that remedy.” 133 S.Ct. at 2311 (emphasis in original). Similarly, in CompuCredit, the Court distinguished the core, substantive "guarantee” of the Credit Repair Organizations Act ("CROA”) from a provision that contemplated the possibility of a judicial forum for vindicating the core right. 132 S.Ct. at 671 (holding that contract "parties remain free to specify” their choice of judicial forum "so long as the guarantee” of the Act "is preserved.” (emphasis in original)). Contract parties can agree on the procedural terms they like (such as resolving disputes in arbitration), but they may not agree to leave the substantive protections of federal law at the door.

. An individual can opt-out of a class action, or opt-in to a collective action, in federal court (both procedural mechanisms). This does not enable an employer to require the same individual to waive the substantive labor right to initiate concerted activities set forth in the NLRA.

. Neither the text of the FAA nor the Supreme Court's arbitration cases support the dissent's theory that the FAA’s saving clause functions differently when a federal, as opposed to state, statute renders a contract term susceptible to an illegality defense.

. Because we see no inherent conflict between the FAA and the NLRA, we make no holding on which statute would win in a fight, nor do we opine on the meaning of their respective dates of passage, re-passage, and amendment.

. In fact, the arbitration procedures in Gil-mer allowed for collective proceedings. Id. The plaintiff simply preferred court adjudication.

. The dissent suggests that employee-claimants could act in "concert” by simply hiring the same lawyers. This is not what the NLRA contemplates by the term "concert.” An employer could not, for example, require its employees to sign a pledge not to join a union but remain in conformity with the NLRA by suggesting that employees hire similar attorneys to represent them in wage negotiations. See also City Disposal Sys., 465 U.S. at 834-35, 104 S.Ct. 1505 (discussing the term “concert” in federal labor law at the time of the NLRA’s passage).

. We recognize that our sister Circuits are divided on this question. We agree with the Seventh Circuit, the only one that "has engaged substantively with the relevant arguments.” Epic Sys., 823 F.3d at 1159; but see Murphy Oil II, 808 F.3d at 1018 (enforcing employer’s concerted action waiver under the FAA); Sutherland v. Ernst & Young LLP, 726 F.3d 290, 297 n.8 (2d Cir. 2013); Owen v. Bristol Care, Inc., 702 F.3d 1050, 1053-54 (8th Cir. 2013).

. Putative-amici labor scholars’ motion for leave to file an amicus brief is denied. See Fed. R. App. P. 29(e). The motion for judicial notice of additional authorities is also denied. See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc., 658 F.3d 936, 940 n.2 (9th Cir. 2011).