# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 15-60860

————

CONVERGYS CORPORATION,

Petitioner Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent Cross-Petitioner.

United States Court of Appeals
Fifth Circuit

**FILED**
August 7, 2017

Lyle W. Cayce
Clerk

————

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board

————

Before HIGGINBOTHAM, ELROD, and HIGGINSON, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

The National Labor Relations Board determined that Convergys violated the National Labor Relations Act both by requiring job applicants to sign a class and collective action waiver and by subsequently seeking to enforce the waiver. Convergys seeks review of the Board's determination, arguing that it conflicts with our binding case law. We GRANT Convergys's petition for review and DENY the Board's cross-application for enforcement.

**I.**

Convergys requires job applicants to sign an agreement that includes the following waiver:

No. 15-60860

> I further agree that I will pursue any claim or lawsuit relating to my employment with Convergys (or any of its subsidiaries or related entities) as an individual, and will not lead, join, or serve as a member of a class or group of persons bringing such a claim or lawsuit.

Despite having signed this agreement, a Convergys employee brought class and collective Fair Labor Standards Act (FLSA) claims against the company in the District Court for the Eastern District of Mississippi. Convergys sought to enforce the waiver agreement by filing a motion to strike these claims. The employee filed charges with the National Labor Relations Board, asserting that the company interfered with the exercise of employee rights by maintaining and by enforcing the waiver agreement. The district court denied the company's motion to strike, Convergys settled the FLSA lawsuit, and the employee requested to withdraw the charges she filed with the Board. However, the Board's General Counsel issued a complaint alleging that Convergys had violated Section 8(a)(1) of the National Labor Relations Act (NLRA) both by requiring job applicants to sign the waiver and by seeking to enforce the waiver in the employee's lawsuit.

An Administrative Law Judge (ALJ) recommended a finding that Convergys had violated Section 8(a)(1) of the NLRA, relying on the Board's prior decision in *D. R. Horton, Inc.*, 357 NLRB 2277, No. 184 (2012). The ALJ's reliance on this decision was subsequently undermined by our denial of enforcement in *D. R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013) (*Horton*). Nevertheless, the Board adopted the ALJ's opinion, as modified, in a two-to-one decision.[1] The Board majority sought to distinguish *Horton* and to rely instead on other Board decisions recognizing a broad "right of employees

---

[1] The Board did not determine whether the waiver is overbroad or whether it could reasonably be understood by an employee to prohibit the exercise of rights that it did not actually waive, and the issue is not before us on appeal.

to join together to improve their terms and conditions of employment through litigation." Notwithstanding these Board decisions, the Board dissent would have relied on "the multitude of court decisions that have enforced class waivers," including the Fifth Circuit's *Horton* decision. The Board ordered Convergys to cease and desist from requiring applicants to sign a waiver, to cease and desist from enforcing the waiver, and to take steps to ensure all applicants and current and former employees knew the waiver was no longer in force. Convergys petitioned for review of the Board's decision, and the Board submitted a cross-application for enforcement of its order.

## II.

Section 7 of the NLRA provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157. The threshold question in this case is whether Section 7's guarantee of the right "to engage in other concerted activities for the purpose of . . . other mutual aid or protection" contemplates a right to participate in class and collective actions.

This court has already rejected the Board's position that Section 7 guarantees a right to participate in class or collective actions, holding that the use of a class or collective action is a procedure rather than a substantive

right.[2]  *Horton*, 737 F.3d at 357;[3] *id.* at 361; *see also id.* at 362 (noting that, under the Board's interpretation, "the NLRA would have to be protecting a right of access to a procedure that did not exist when the NLRA was (re)enacted").  Despite our decision in *Horton* and similar rulings by a majority of circuits that have considered the issue,[4] the Board has persistently clung to its view that Section 7 guarantees a substantive right to participate in class and collective actions, and we have persistently declined to enforce Board orders based on this disregard of our law.[5]  We recognize that the Supreme Court's decision in *NLRB v. Murphy Oil USA, Inc., cert. granted*, 137 S. Ct. 809 (2017), may resolve the issue shortly.  In the meantime, however, we must

---

[2] Because we are bound to follow our precedent, we cannot apply *Chevron* deference and, likewise, we do not reach how we would interpret Section 7 apart from our binding precedent.

[3] Citing *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 643 (5th Cir. 2012), *abrogated on other grounds by Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013) ("[W]e have characterized a class action as a procedural device."); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (class action procedures not a substantive right under FLSA); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997) (rule providing for class actions could not be interpreted to "abridge, enlarge or modify any substantive right"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 32 (1991) (class action procedures not a substantive right under ADEA); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.").

[4] *See, e.g.*, *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir. 2014); *Sutherland v. Ernst & Young, LLP*, 726 F.3d 290 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013).  *But see Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017); *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017).

[5] *See, e.g.*, *Jack in the Box, Inc. v. NLRB*, No. 16-60386, 2016 WL 7235648 (5th Cir. Dec. 13, 2016); *Citigroup Tech., Inc. v. NLRB*, No. 15-60856, 2016 WL 7174107 (5th Cir. Dec. 8, 2016); *Emp'rs Res. V. NLRB*, No. 16-60024, 2016 WL 6471215 (5th Cir. Nov. 1, 2016); *Citi Trends, Inc. v. NLRB*, No. 15-60913, 2016 WL 4245458 (5th Cir. Aug. 10, 2016); *24 Hour Fitness v. NLRB*, No. 16-60005, 2016 WL 3668038 (5th Cir. June 27, 2016); *On Assignment Staffing Services, Inc. v. NLRB*, No. 15-60642, 2016 WL 3685206 (5th Cir. June 6, 2016); *Chesapeake Energy Corp. v. NLRB*, No. 15-60326, 2016 WL 573705 (5th Cir. Feb. 12, 2016); *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013 (5th Cir. 2015), *cert. granted*, 137 S. Ct. 809 (2017).

apply our circuit's binding precedent. *See, e.g.*, *Horton*, 737 F.3d at 344; *Murphy Oil*, 808 F.3d at 1013.

In *Horton*, we considered the Board's position that a class and collective action waiver violated the NLRA and determined that the waiver "must be enforced according to its terms." *Horton*, 737 F.3d at 362. Because the waiver at issue appeared in an arbitration agreement, we inquired whether enforcement of the agreement under the Federal Arbitration Act (FAA) was "precluded by another statute's contrary congressional command." *Id.* at 358. We recognized that a contrary congressional command could have been implicit in a "conflict between the FAA and the NLRA's purpose," but explained that "we do not find such a conflict." *Id.* at 361. The reason that the FAA and the NLRA did not conflict was that Section 7 could not be interpreted to create a substantive right to participate in class and collective actions—as we explained, "a substantive right to proceed collectively has been foreclosed by prior decisions." *Id.* Thus, our determination in *Horton* that a class and collective action waiver is enforceable was based on the fact that "[t]he use of class action procedures . . . is not a substantive right." *Id.* at 357.

Because our decision in *Horton* was based on our interpretation of Section 7 and our reasoning was not limited to interpretation and application of the FAA, the Board's argument that *Horton* is limited to the arbitration context is unpersuasive.[6] *Horton*'s interpretation of Section 7 is binding on this panel. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th

---

[6] In support of this position, the Board cites *Killion v. KeHE Distrib., LLC*, 761 F.3d 574 (6th Cir. 2014). *Killion* is not a persuasive basis for distinguishing our prior decisions as it is an out-of-circuit decision that interprets the FLSA rather than the NLRA, holds contrary to Fifth Circuit precedent that the FLSA's provision for class actions conveys a right that cannot be waived, declines to decide whether a different rule should apply in the context of arbitration agreements, and relies on a framework for evaluating waivers that is not supported by the reasoning of *Horton* and its progeny. *See id.* at 590–92.

Cir. 2008) ("[O]ne panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court."); *see also Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000) ("When confronting decisions of prior panels . . . we are bound by not only the result but also those portions of the opinion necessary to that result.").

The Board's argument that Section 7 creates a substantive right to participate in class and collective actions ignores *Horton*'s contrary holding that "[t]he use of class action procedures . . . is not a substantive right." *Horton*, 737 F.3d at 357. Moreover, the Board's assertion that the waiver in *Horton* was permissible only because the FAA overrode the NLRA contradicts our determination in *Horton* that the statutes are not in conflict. *See id.* at 361. Finally, the Board's suggestion that *Horton* is distinguishable because the FAA empowers arbitration agreements to waive rights that other agreements cannot waive is contrary to Supreme Court precedent, which holds that the FAA places arbitration agreements "on an equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). For all these reasons, *Horton* precludes the Board's position.

We observed in *Horton* that "a substantive right to proceed collectively has been foreclosed by prior decisions." *Horton*, 737 F.3d at 361. That is why, even before *Horton*, a district court upheld the very waiver that is at issue in this case, explaining that "there is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in the context of any other contract" and that "class action waivers are upheld because they are contractual provisions that do not affect any substantive rights." *Palmer v. Convergys Corp.*, No. 7:10-CV-145, 2012 WL 425256, at *2 (M.D. Ga. Feb. 9, 2012). After our decision in *Horton*, the idea that Section 7 protects a substantive right to participate in class and collective actions is still more

firmly foreclosed. Simply put, the Board's position that Section 7 guarantees a substantive right of employees to participate in class and collective actions against their employers is contrary to our binding precedent.[7]

The dissenting opinion asserts that the Supreme Court, the Fifth Circuit, and the Board have each "made plain that class and collective actions constitute 'other concerted activities' within Section 7 of the NLRA." However, the cases on which the dissenting opinion relies do not stand for this proposition.

The Supreme Court opinion on which the dissenting opinion relies is *Eastex, Inc. v. NLRB*, 437 U.S. 556 (1978). This decision involved the right to distribute newsletters, but included a statement in *dicta* about the right to resort to administrative and judicial fora. *Id.* at 565–66. The Supreme Court expressly declined to address "the question of what may constitute 'concerted' activities in [the litigation] context" for purposes of Section 7. *Id.* at 566 n.15. Thus, *Eastex* did not make plain that class and collective actions in particular constitute "other concerted activities" for purposes of the NLRA.

The Fifth Circuit opinion on which the dissenting opinion relies is *Altex Ready Mixed Concrete Corp. v. NLRB*, 542 F.2d 295 (5th Cir. 1976). This case provides an example of a concerted activity in the litigation context, holding that a union's filing of a civil action is protected by the NLRA. *Id.* at 297. It does not hold that the phrase "other concerted activities" contemplates participation in class and collective actions. As explained above, *Horton* has decided the question before us, and we are not free to adopt the reasoning that

---

[7] To the extent the dissenting opinion disagrees with this holding, its disagreement is with *Horton*, which we are bound to follow. *Jacobs*, 548 F.3d at 378.

No. 15-60860

we rejected in *Horton* or to extend Supreme Court and Fifth Circuit decisions in a manner contrary to *Horton*.[8]  *See Jacobs*, 548 F.3d at 378.

## III.

Section 8(a)(1) of the NLRA states that "[i]t shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. § 158(a)(1).  The Board found that Convergys violated Section 8(a)(1) both by requiring prospective employees to sign a class and collective action waiver and by seeking to enforce the waiver against an employee.  It held that both actions abrogated the same Section 7 right to participate in class and collective actions.

As explained above, Section 7's guarantee of the right "to engage in other concerted activities for the purpose of . . . other mutual aid or protection," 29 U.S.C. § 157, does not include a right to participate in class and collective actions.  Accordingly, abrogation of the asserted right to participate in class and collective actions was not abrogation of a Section 7 right and therefore does not constitute an unfair labor practice under Section 8(a)(1).  Contrary to the determination of the Board, Convergys did not engage in an unfair labor practice for purposes of Section 8(a)(1) by requiring applicants to sign a waiver or by seeking to enforce the waiver.[9]

## IV.

For the reasons stated above, we GRANT Convergys's application for review of the National Labor Relations Board order and DENY the Board's cross-application for enforcement of the order.

---

[8] The dissenting opinion also relies on two Board decisions.  Unlike our own precedent, Board decisions are not binding on us.

[9] Convergys argues alternatively that a Section 7 right to participate in class and collective actions is waivable.  Because we decide this case based on our binding precedent, we do not reach this argument.

No. 15-60860

STEPHEN A. HIGGINSON, Circuit Judge, concurring in judgment:

I am persuaded by Judge Higginbotham's thoughtful conclusion that maintaining and enforcing a class and collective action waiver violates the NLRA, but I also agree with Judge Elrod that our rule of orderliness forecloses our ability to take that position in this case. In *Horton*, we held that the use of class action procedures is not a substantive right under Section 7 of the NLRA and concluded that "the NLRA has no inherent conflict with the FAA." *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 361 (5th Cir. 2013). I view the Board's interpretation of Section 7 as irreconcilable with that precedent.[1]

A clear explanation of the distinction between substantive and procedural rights is elusive, but I find helpful the Ninth Circuit's discussion in *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 985–87 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017). As that court explained, substantive rights are "the essential, operative protections of a statute," whereas "procedural rights are the ancillary, remedial tools that help secure the substantive right." *Id.* at 985. Critically, "substantive rights cannot be waived in arbitration agreements." *Id.* But the problem with an arbitration contract that waives substantive rights "is not that it requires arbitration; it is that the contract term defeats a substantive federal right . . . ." *Id.* Ultimately, the Ninth Circuit concluded that "[t]he rights established in § 7 of the NLRA—including the right of employees to pursue legal claims together—are substantive. They are the central, fundamental protections of the Act, so the FAA does not mandate the enforcement of a contract that alleges their waiver." *Id.* at 986. Our court in

---

[1] Although the Board did not urge it, I find intriguing Judge Higginbotham's argument that the distinction between "procedural" and "substantive" rights might have no bearing outside of the arbitration context, which would render irrelevant *Horton*'s rejection of a "substantive" right to class and collective action under the NLRA.

No. 15-60860

*Horton* came to the opposite conclusion. According to *Horton*, the NLRA provides no substantive right—that is, as I understand it, no nonwaivable right—to class or collective action.

But regardless of the nature of the rights protected by the Section 7, I find it difficult to reconcile a Section 7 guarantee to class and collective action with *Horton*'s conclusion that there is no "inherent conflict" between the NLRA and the FAA. Indeed, if Section 7 encompassed such a right and prohibited its prospective waiver as the Board urges, there would appear to be an inherent conflict between the NLRA and our interpretation of the FAA as mandating enforcement of contracts compelling individual arbitration.

I read *Horton* as interpreting the NLRA narrowly to avoid conflict with the FAA. However, as this case illustrates, interpreting a statute to avoid conflict in a narrow band of cases may have the unintended consequence of forever limiting rights that the statute was intended to protect. Like the Second Circuit, "[i]f we were writing on a clean slate," I would urge that this court adopt Chief Judge Wood's and Chief Judge Thomas's reasoned understandings of Section 7's scope. *Patterson v. Raymours Furniture Co.*, 659 F. App'x 40, 43 (2d Cir. 2016), *as corrected* (Sept. 7, 2016), *as corrected* (Sept. 14, 2016) (unpublished) (summary order); *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017); *Morris*, 834 F.3d at 975. The Supreme Court may soon do so or may otherwise decide the FAA controversy in a manner that compels reconsideration of our decision today. Constrained by our precedent, however, I concur in the judgment only.

10

No. 15-60860

PATRICK E. HIGGINBOTHAM, Circuit Judge, dissenting:

This case concerns whether a company's class and collective action waiver violates Section 8(a)(1) of the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. §§ 151, *et seq.* Although this Court has held time and again that such waivers are permissible,[1] one important distinction makes the waiver in this case different: there is no arbitration agreement. Without being contained in an arbitration agreement and thus shielded by the protective force of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, a bare class and collective action waiver violates Section 8(a)(1).[2]

Enacted by Congress in 1935, the NLRA "affords employees the rights to organize and to engage in collective bargaining free from employer interference."[3] Two years after the NLRA's enactment, the Supreme Court declared that "the statute goes no further than to safeguard the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer. That is a fundamental right."[4]

Two provisions of the Act are at issue here. First, Section 7, which provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in *other*

---

[1] *E.g.*, *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 348 (5th Cir. 2013); *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013, 1015 (5th Cir. 2015), *cert. granted*, 137 S. Ct. 809 (2017); *Chesapeake Energy Corp. v. N.L.R.B.*, 633 F. App'x 613, 614–15 (5th Cir. 2016) (per curiam) (unpublished).

[2] 29 U.S.C. § 158(a) ("It shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]").

[3] *N.L.R.B. v. Health Care & Ret. Corp. of Am.*, 511 U.S. 571, 573 (1994).

[4] *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937).

No. 15-60860

*concerted activities for the purpose of* collective bargaining or *other mutual aid or protection . . .*[5]

Second, Section 8(a)(1) makes it "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]"[6] Putting the two provisions together, the question in this case is whether maintaining and enforcing a class and collective action waiver constitute "unfair labor practice[s]" that interfere with an employee's right to "engage in other concerted activities for the purpose of . . . other mutual aid or protection." Distilled further, the question is whether class and collective actions constitute "other concerted activities for the purpose of . . . mutual aid or protection."

The plain language informs the answer. To this point, I agree with the analysis of Chief Judge Wood in the Seventh Circuit:

> The ordinary meaning of the word "concerted" is: "jointly arranged, planned, or carried out; coordinated." Concerted, New Oxford American Dictionary 359 (3d ed. 2010). Activities are "thing[s] that a person or group does or has done" or "actions taken by a group in order to achieve their aims." *Id.* at 16. Collective or class legal proceedings fit well within the ordinary understanding of "concerted activities."[7]

But we need not stop at the plain language—which the majority passes by—as the Supreme Court's doctrine supports the same conclusion. "The term 'concerted activit[y]' is not defined in the Act but it clearly enough embraces the activities of employees who have joined together in order to achieve

---

[5] 29 U.S.C. § 157 (emphasis added).

[6] 29 U.S.C. § 158(a).

[7] *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1153 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017); *accord* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "concerted activity" as "[a]ction by employees concerning wages or working conditions").

common goals."[8] Class and collective actions fit comfortably in this understanding. Further, in *Eastex, Inc. v. N.L.R.B.*, the Court explained:

> The 74th Congress knew well enough that labor's cause often is advanced on fronts other than collective bargaining and grievance settlement within the immediate employment context. It recognized this fact by choosing, as the language of § 7 makes clear, to protect concerted activities for the somewhat broader purpose of 'mutual aid or protection' as well as for the narrower purposes of 'self-organization' and 'collective bargaining.' Thus, it has been held that the 'mutual aid or protection' clause protects employees from retaliation by their employers when they seek to improve working conditions *through resort to administrative and judicial forums*, and that employees' appeals to legislators to protect their interests as employees are within the scope of this clause. To hold that activity of this nature is entirely unprotected—irrespective of location or the means employed— would leave employees open to retaliation for much legitimate activity that could improve their lot as employees.[9]

The majority opinion dances away from *Eastex* by pointing to its language that the Supreme Court "expressly declined to address 'the question of what may constitute "concerted" activities in [the litigation] context' for purposes of Section 7." Though the majority correctly recites the Supreme Court's statement in footnote 15,[10] it misses the forest for a tree.

In *Eastex*, the Supreme Court was faced with a version of the same question we face here: whether an employer violated § 8(1)(a) of the NLRA by interfering with its employees' § 7 rights to engage in "concerted activities for the purpose of . . . mutual aid or protection."[11] But instead of addressing

---

[8] *N.L.R.B. v. City Disposal Sys. Inc.*, 465 U.S. 822, 830 (1984) (citation omitted).

[9] 437 U.S. 556, 565–67 (1978) (citations omitted) (emphasis added).

[10] *See id.* at 566 n.15 ("We do not address here the question of what may constitute 'concerted' activities in this context." (citation omitted)).

[11] *Id.* at 558.

whether class and collective actions constituted protected concerted activities, *Eastex* addressed whether employees' distribution of a pro-union newsletter constituted protected concerted activities.[12] The heart of *Eastex* was the Court's interpretation of § 7's "mutual aid or protection" clause.[13] And in holding that the distribution of the pro-union newsletter constituted protected activity,[14] the thrust of the Court's reasoning was its rejection of a narrow interpretation of § 7.[15] In rejecting a narrow reading of § 7 and acknowledging Congress's recognition that "labor's cause often is advanced on fronts other than collective bargaining and grievance settlement,"[16] *Eastex* supports the understanding that class and collective actions come within § 7.

Returning to footnote 15, the majority elides the balance of that footnote: a citation to this Court's opinion in *Altex Ready Mixed Concrete Corp. v. NLRB*, 542 F.2d 295, 297 (5th Cir. 1976). Two years before *Eastex*, this Court in *Altex* explicitly found legal actions encompassed in § 7.[17] That case, authored by Judge Ainsworth, stemmed from "a labor-management agreement provision concerning whether management could 'require' drivers to load red dye into concrete mixer drums."[18] The drivers instituted a strike, in connection with which "the drivers' union, Teamsters, Chauffeurs, Warehousemen & Helpers,

---

[12] *See id.*

[13] *See id.* at 562 ("Because of apparent differences among the Courts of Appeals as to the scope of rights protected by the 'mutual aid or protection' clause of § 7, we granted certiorari." (citations omitted)).

[14] *See id.* at 570.

[15] *See, e.g.*, *id.* at 565 ("We . . . find no warrant for petitioner's view that employees lose their protection under the 'mutual aid or protection' clause when they seek to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship.").

[16] *Id.* at 565.

[17] 542 F.2d at 297.

[18] *Id.* at 296.

Local No. 5, filed an action in a Louisiana state court asking that Altex management be enjoined from requiring drivers to load red dye."[19] This Court found that filing to be protected by § 7, explaining that "[g]enerally, filing by *employees* of a labor related civil action is protected activity under section 7 of the NLRA unless the employees acted in bad faith."[20]

The majority's claim that *Altex* "does not hold that the phrase 'other concerted activities' contemplates participation in class and collective actions" is not sustainable. The ALJ in *Altex* had "found that filing the state court action against Altex was a concerted activity protected under section 7 of the NLRA."[21] This Court, in turn, held that the ALJ's findings were "supported by substantial evidence, and that they warrant[ed] the inferences drawn from them."[22] *Altex*, a binding decision, supplies the answer in this case in its affirmance that a "filing by employees"—which class and collective actions are—is a protected concerted activity under § 7. With respect, the majority's choice to apply *Horton* instead of *Altex* forgets our rule of orderliness, under which the earlier opinion controls.

That group legal actions are encompassed in § 7 is consistent with other circuits' understanding.[23] Importantly, the NLRB itself understands class and

---

[19] *Id.*

[20] *Id.* at 297 (emphasis added) (citations omitted).

[21] *Id.* at 296.

[22] *Id.* at 297 (citation omitted).

[23] *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011) ("[A] lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 . . . ." (citations omitted)); *Leviton Mfg. Co. v. N.L.R.B.*, 486 F.2d 686, 689 (1st Cir. 1973) ("[T]he filing of a labor related civil action by a group of employees is ordinarily a concerted activity protected by § 7, unless the employees acted in bad faith." (citations omitted)).

collective actions to fall within § 7's protections.[24] In *Spandsco Oil & Royalty Co.*, for example, the NLRB found that three union members' suit for overtime back pay constituted protected concerted activity.[25] As the suit followed an employee's discussions about pay due under the Fair Labor Standards Act, it is fair to assume that the suit was in fact an FLSA action.[26] As for class actions, in *Harco Trucking, LLC & Scott Wood*, the NLRB affirmed an ALJ's finding that an employer "violated Section 8(a)(1) of the Act by refusing to hire Wood because he engaged in *the protected concerted activity of filing and maintaining [a] class action lawsuit*[.]"[27] "Like other administrative agencies, the NLRB is entitled to judicial deference when it interprets an ambiguous provision of a statute that it administers."[28] This Court is obliged to "enforce the Board's order if its construction of the statute is reasonably defensible"[29] regardless of whether we would come to a different conclusion on first impression. The majority slights this well-established standard of review, footed in the more well-established principle of judicial restraint.

---

[24] *See Spandsco Oil & Royalty Co.*, 42 NLRB 942, 949 (1942); *In Re 127 Rest. Corp.*, 331 NLRB 269, 275 (2000) ("It is well settled that the filing of a civil action by employees is protected activity unless done with malice or in bad faith." (citations omitted)).

[25] 42 NLRB at 949.

[26] *See id.* at 948.

[27] 344 NLRB 478, 478–79 (2005) (emphasis added).

[28] *Lechmere, Inc. v. N.L.R.B.*, 502 U.S. 527, 536 (1992) (citations omitted); *accord N.L.R.B. v. Fin. Inst. Employees of Am., Local 1182, Chartered by United Food & Commercial Workers Int'l Union, AFL-CIO*, 475 U.S. 192, 202 (1986) ("Our cases have previously recognized the Board's broad authority to construe provisions of the Act, and have deferred to Board decisions that are not irrational or inconsistent with the Act." (citations omitted)); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) ("If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." (footnotes omitted)).

[29] *Murphy Oil USA*, 808 F.3d at 1017 (citation and quotation marks omitted).

No. 15-60860

The majority also relies on a statement from *D.R. Horton* that "under the Board's interpretation, 'the NLRA would have to be protecting a right of access to a procedure that did not exist when the NLRA was (re)enacted.'"[30] This incorrectly suggests that Rule 23 was the origin of group litigation. Not so. Rule 23 did not create, but gave discipline to, group litigation. Nor is it a sustainable assertion that class actions are not concerted, contrary to the understanding of one of my colleagues in the Sixth Circuit.[31] Rule 23 at its core insists that class representatives' interests coincide with the members of the class. And that class actions to be certified insist upon that community of interest only makes it more clear that in filing a class action, employees have "joined together in order to achieve common goals."[32]

The Supreme Court, this Court, and the NLRB, have each made plain that class and collective actions constitute "other concerted activities" within § 7 of the NLRA. Consequently, when an employer like Convergys requires an applicant to waive class and collective actions, it has "interfere[d] with" that employee's right "to engage in other concerted activities for the purpose of . . . other mutual aid or protection[.]"[33] The Board's decision that Convergys violated Section 8(a)(1) of the NLRA should be enforced.

---

[30] *D.R. Horton*, 737 F.3d at 362.

[31] *Nat'l Labor Relations Bd. v. Alternative Entm't, Inc.*, 858 F.3d 393, 415 (6th Cir. 2017) (Sutton, J., concurring in part and dissenting in part) ("Even if procedure were relevant to 'concertedness,' there is nothing inherently 'concerted' about the class action . . . A single plaintiff can litigate a class action to completion without any intervention by or material support from any other class members. This sort of representative action is not necessarily concerted. If anything, it risks undermining genuine group action by permitting the representative plaintiff to stand in for all nonparticipating parties.").

[32] *City Disposal Sys. Inc.*, 465 U.S. at 830 (citation omitted).

[33] 29 U.S.C. § 157.

17

No. 15-60860

Plain language and controlling precedent notwithstanding, the majority claims that "[t]his court has already rejected the Board's position that Section 7 guarantees a right to participate in class or collective actions[.]" We have not. In the seminal cases of *D.R. Horton* and *Murphy Oil*, this Court held that class and collective action waivers *in arbitration agreements* do not violate Section 8(a)(1).[34] To ignore the arbitration context is to rewrite these opinions and brush aside the very reason the waivers at issue were upheld.

Even a cursory reading of *D.R. Horton* shows that its reasoning is limited to arbitration cases. The first sentences reveal its moorings to arbitration and the FAA:

> The National Labor Relations Board held that D.R. Horton, Inc. had violated the [NLRA] by requiring its employees to sign *an arbitration agreement* that, among other things, prohibited an employee from pursuing claims in a collective or class action. On petition for review, we disagree and *conclude that the Board's decision did not give proper weight to the Federal Arbitration Act.*[35]

The *D.R. Horton* majority acknowledged the support for the Board's understanding that class and collective actions are protected by § 7[36] before sharply pivoting to the FAA: "To stop here, though, is to make the NLRA the only relevant authority. The Federal Arbitration Act [] has equal importance in our review. Caselaw under the FAA points us in a different direction than the course taken by the Board."[37] The *D.R. Horton* Court went on to summarize the Board's position with respect to the interaction between the NLRA and the

---

[34] *D.R. Horton*, 737 F.3d at 362; *Murphy Oil USA*, 808 F.3d at 1018.

[35] *D.R. Horton*, 737 F.3d at 348 (emphasis added).

[36] *See id.* at 356–57.

[37] *Id.* at 357.

FAA.[38] It then evaluated that reasoning, focusing on whether the two exceptions to the enforcement of arbitration agreements applied.[39] It concluded that the FAA's savings clause was not implicated[40] and that "[t]he NLRA should not be understood to contain a congressional command overriding application of the FAA."[41] The *D.R. Horton* opinion concluded its analysis by remarking that "[t]he issue here is narrow: do the rights of collective action embodied in this labor statute make it distinguishable from cases which hold that arbitration must be individual arbitration?"[42] The opinion's dependence on arbitration is clear. As it was in *Murphy Oil*.[43] Those cases did not hold that, absent the alternative processes of arbitration, class and collective action waivers are valid. They thus do not control here.

The majority's insistence otherwise is partly premised on an irrelevant distinction between procedural and substantive rights. Such reasoning is primarily a creature of arbitration law.[44] The majority surely agrees. After all, almost every case it cites in support of its proposition that "the use of a class

---

[38] *See id.* at 358.

[39] *Id.* ("We start with the requirement under the FAA that arbitration agreements must be enforced according to their terms. Two exceptions to this rule are at issue here: (1) an arbitration agreement may be invalidated on any ground that would invalidate a contract under the FAA's 'saving clause,'; and (2) application of the FAA may be precluded by another statute's contrary congressional command[.]" (citations omitted)).

[40] *Id.* at 360 ("The saving clause is not a basis for invalidating the waiver of class procedures in the arbitration agreement.").

[41] *Id.* at 362.

[42] *Id.* (citation omitted).

[43] *Murphy Oil USA*, 808 F.3d at 1018 ("Murphy Oil committed no unfair labor practice by requiring employees to relinquish their right to pursue class or collective claims in all forums by signing the arbitration agreements at issue here." (citation omitted)).

[44] *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

or collective action is a procedure rather than a substantive right" is an arbitration case.[45]

As then-Judge Roberts explained, "[s]tatutory claims may be subject to agreements to arbitrate, so long as the agreement does not require the claimant to forgo *substantive* rights afforded under the statute."[46] This is because arbitration is understood as an alternative forum to the courts. Waiving judicial procedural rights in favor of arbitration is permissible precisely because the parties trade one forum and its attendant procedures for another.[47] It is within this framework that this Court in *D.R. Horton* found that class action procedures are not a substantive right.[48] As a result, they could be waived in favor of arbitration. Outside of the arbitration context, however, characterizing the right as procedural does not allow a required "waiver" since there is no alternative forum. Accordingly, in this non-arbitration case, the right to class and collective actions is best characterized

---

[45] *D.R. Horton*, 737 F.3d at 357; *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 631–32 (5th Cir. 2012), *abrogated on other grounds by Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013) (appeal of arbitration award for class arbitration); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 296–97 (5th Cir. 2004) (affirming judgment to compel arbitration); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991) (considering "whether a claim under the Age Discrimination in Employment Act of 1967 . . . can be subjected to compulsory arbitration pursuant to an arbitration agreement").

[46] *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (emphasis added) (citing *Gilmer*, 500 U.S. at 26; *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1481 (D.C. Cir. 1997)).

[47] *Mitsubishi Motors Corp.*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."); *accord Gilmer*, 500 U.S. at 31.

[48] *D.R. Horton*, 737 F.3d at 357.

No. 15-60860

as simply a statutory right protected from employer-required waiver.[49] The substantive/procedural dichotomy has no operative effect.[50]

One need only look to the other provisions in § 7 to understand. Section 7 guarantees the right to "self-organization" and "to bargain collectively." Both could be reasonably understood as procedural in nature, as they are processes for achieving substantive ends. Yet, just as an employer cannot require employees to waive their right to bargain collectively by characterizing bargaining as procedural,[51] an employer cannot require employees to waive their right to class and collective actions. In its final footnote, the majority notes, but declines to address, Convergys' alternative argument that Section 7 rights may be waived. But of course § 7 rights are not waivable; § 8(a)(1) says so.[52]

The majority fails to appreciate the role of the FAA in enforcing agreements to arbitrate. In 2013, this Court decided *D.R. Horton*, affirmed in 2015 by *Murphy Oil*. Both cases held that class and collective action waivers in arbitration agreements were permissible.[53] The following year, four other

---

[49] *See Alternative Entm't, Inc.*, 858 F.3d at 407 ("[E]ven if the right to concerted legal action is procedural, rather than substantive, it is still a right guaranteed by § 7 of the NLRA.").

[50] *See Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 592 (6th Cir. 2014) (arbitration agreement cases do not "speak to the validity of a collective-action waiver outside of the arbitration context").

[51] *See Nat'l Licorice Co. v. N.L.R.B.*, 309 U.S. 350, 359–61 (1940) (certain restraints on collective bargaining violated Act).

[52] 29 U.S.C. § 158(a) (it is "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title").

[53] *See D.R. Horton*, 737 F.3d at 348; *Murphy Oil USA*, 808 F.3d at 1018. Not all judges in our Circuit have embraced the reasoning of those opinions. *See D.R. Horton*, 737 F.3d at 364 (Graves, J., concurring in part and dissenting in part) (agreeing with NLRB that arbitration agreement interfered with § 7 rights); *SF Markets, L.L.C. v. N.L.R.B.*, No. 16-

21

circuits decided the issue. The Eighth and Second Circuits agreed that the waivers were permissible;[54] the Seventh and Ninth Circuits disagreed.[55] This year the Supreme Court granted certiorari in the Ninth, Seventh, and Fifth Circuit cases and consolidated them.[56] After the Court's grant of certiorari, the Sixth Circuit also weighed in, siding with the Seventh and Ninth Circuits.[57] Whether class and collective action waivers within arbitration agreements are permissible will soon be decided by the Supreme Court.

Today we decide whether a class and collective action waiver demanded as a condition of employment sans arbitration agreement is permissible.[58] The

---

60186, 2016 WL 7468041, at *1 (5th Cir. July 26, 2016) (per curiam) (unpublished) (Dennis, J., concurring) (urging en banc reconsideration of issue).

[54] *Cellular Sales of Missouri, LLC v. N.L.R.B.*, 824 F.3d 772, 776 (8th Cir. 2016) ("Cellular Sales did not violate section 8(a)(1) by requiring its employees to enter into an arbitration agreement that included a waiver of class or collective actions in all forums to resolve employment-related disputes."); *Patterson v. Raymours Furniture Co., Inc.*, 659 F. App'x 40, 43 (2d Cir. 2016), *as corrected* (Sept. 7, 2016), *as corrected* (Sept. 14, 2016) (unpublished) (summary order) ("If we were writing on a clean slate, we might well be persuaded, for the reasons forcefully stated in Chief Judge Wood's and Chief Judge Thomas's opinions in *Lewis* and *Morris*, to join the Seventh and Ninth Circuits and hold that the EAP's waiver of collective action is unenforceable. But we are bound by our Court's decision in S*utherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013), which aligns our Circuit on the other side of the split."); *see also Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1327 (11th Cir. 2014) (arbitration agreement waiving FLSA collective actions enforceable under FAA).

[55] *Lewis*, 823 F.3d at 1151 (holding arbitration agreement that barred collective arbitration and collective action in other forums violated NLRA and was unenforceable under FAA); *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 979 (9th Cir. 2016) (concluding that arbitration agreement that precluded employees from bringing concerted legal claims about their employment violated NLRA, and vacating order compelling individual arbitration).

[56] *Alternative Entm't*, 858 F.3d at 401 n.4 (citing —— U.S. ——, 137 S. Ct. 809 (2017)).

[57] *Id.* at 408 ("[A]n arbitration provision requiring employees covered by the NLRA individually to arbitrate all employment-related claims is not enforceable. Such a provision violates the NLRA's guarantee of the right to collective action and, because it violates the NLRA, falls within the FAA's saving clause.").

[58] The Sixth Circuit has decided a similar issue. *Killion*, 761 F.3d at 579, 592 (holding class and collective action waiver outside of arbitration agreement invalid in FLSA case, and noting "no countervailing federal policy that outweighs the policy articulated in the FLSA").

language of § 7 cannot be plainer: class and collective actions are "other concerted activities for the purpose of . . . mutual aid or protection."[59] This conclusion is reinforced by Supreme Court precedent, this Court's precedent, and the NLRB's interpretation of the Act, to which we owe deference. Because such actions are rights protected by § 7, employers cannot interfere with them by forcing employees to waive them.[60] I would enforce the Board's orders, and so I dissent.

---

[59] 29 U.S.C. § 157.
[60] 29 U.S.C. § 158(a).